KRISTIN N. REYNA DEHART (SBN: 211075)
kreyna@grsm.com
TIMOTHY A. HANNA (SBN: 310620)
thanna@grsm.com
ANGELA M. HAMPTON (SBN: 320749)
ahampton@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7760
Facsimile: (619) 696-7124

Attorneys for Defendants
CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA MASLANKOWSKI, an individual; THOMAS MASLANKOSKI, an individual; P.M. by and through their guardian ad litem JUSTYNA LINDAHL; S.M., a minor, by and through their guardian ad litem JUSTYNA LINDAHL;<br><br>Plaintiff,<br><br>v.<br><br>CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; and DOES 1 THROUGH 50, inclusive;<br><br>Defendants. | CASE NO. **'22CV0632 TWR BLM**<br><br>**NOTICE OF REMOVAL**<br><br>**[28 U.S.C. §§ 1331, 1441, 1442, 1446]** |

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442 and 1446, Defendants Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM LP, collectively referred to as "Defendants," hereby remove to this Court a civil lawsuit filed in the Superior Court for the County of San Diego, Case Number 37-2022-00002460-CU-PO-CTL. In support of this Notice of Removal, Defendants

-1-
NOTICE OF REMOVAL

state:

1. On January 15, 2022, Plaintiffs Anna Maslankowski; Thomas Maslankowski; P.M., a minor, by and through their guardian ad litem, Justyna Lindahl; and S.M., a minor, by and through their guardian ad litem,[1] Justyna Lindhal ("Plaintiffs") filed their Complaint with the San Diego County Superior Court, relating to their former military housing located at 132 Cuyamaca Street, Oceanside, California and 607 Parker Road, Oceanside, California (the "Subject Properties"). On April 6, 2022, Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM LP were served with a copy of the Complaint, summonses, Plaintiffs' applications and order for appointment of guardian ad litem, notice of case assignment and ADR information, and jury fee deposit. A copy of the above listed papers which were served on Defendants are attached to this Notice of Removal as Exhibit A.

2. The ground lessor of the Subject Properties is Camp Pendleton & Quantico Housing LLC, and the property manager is Defendant LPC Pendleton Quantico PM LP. (DeHart Decl. at ¶3).

3. This action is removable to this Court on three independent bases: (1) pursuant to 28 U.S.C. § 1331, because the events alleged in the Complaint occurred within a federal enclave; and (2) under 28 U.S.C. § 1442, because (a) Defendant Camp Pendleton & Quantico Housing LLC is a federal agency; (b) at all relevant times Defendants Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM, LP were acting under a federal officer.

4. Because the events alleged in the Complaint occurred on a federal enclave, this Court has jurisdiction under 28 U.S.C. § 1331. <u>See</u>, e.g., <u>Akin v. Ashland Chem. Co.</u>, 156 F.3d 1030, 1034 (10th Cir. 1998) (finding that "[p]ersonal

---
[1] Minor's names redacted per the Court's General Order. Minors' names have also been redacted from Exhibit A.

-2-
NOTICE OF REMOVAL

1  injury actions which arise from incidents occurring in federal enclaves may be
2  removed to federal district court as a part of federal question jurisdiction."); see
3  also Federico v. Lincoln Military Housing, LLC et. al, 901 F. Supp. 2d 654 (E.D.
4  Va. Oct. 18, 2012) (upholding removal of nearly identical contract (residential
5  lease) and tort claims against affiliated "Lincoln" entities that occurred on federal
6  enclave).  Authority for federal enclave jurisdiction arises from Article I, section 8,
7  clause 17 of the United States Constitution, which provides in relevant part that
8  "Congress shall have the power . . . to exercise exclusive Legislation . . . over all
9  Places purchased by the Consent of the Legislature of the State in which the Same
10 shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other
11 needful Buildings."  U.S. Const., Art. I § 8, cl. 17.
12        5.    Federal courts, including the Ninth Circuit, routinely interpret this
13 clause to permit removal of tort claims filed in state court if the alleged tort was
14 committed on a federal enclave.  The Ninth Circuit held, in Durham v. Lockheed
15 Martin Corp., 445 F.3d 1247 (9th Cir. 2006), that "Federal Courts have federal
16 question jurisdiction over tort claims that arise on 'federal enclaves.'"  Id. at 1250;
17 Willis v. Craig, 555 F.2d 724, 726 n.4 (9th Cir. 1977) (the Court had "no quarrel
18 with the propriety of enclave jurisdiction in this case (if the facts support it), even
19 though the state courts may have concurrent jurisdiction.").
20        6.    In Akin, several Air Force employees brought toxic tort claims against
21 certain manufacturers of asbestos in state court.  156 F.3d at 1033-34.  The
22 complaint alleged that the employees were exposed to asbestos at the Tinker Air
23 Force Base in Oklahoma City.  Id. at 1033.  The defendants removed the case to
24 federal court based on federal enclave jurisdiction.  Id. at 1034.  The Tenth Circuit
25 upheld removal of the case, finding that "personal injury actions which arise from
26 incidents occurring in federal enclaves may be removed to federal district court as
27 a part of federal question jurisdiction."  Id.; see also Stokes v. Adair, 265 F.2d 662,
28 665-66 (4th Cir. 1959) (finding federal district court possessed jurisdiction for

personal injuries arising on a federal enclave); Mater v. Holley, 200 F.2d 123, 124-25 (5th Cir. 1952) (finding that federal courts have jurisdiction over torts committed on federal enclaves); Lawler v. Miratek Corp., 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010) (finding that state law claim for defamatory statement allegedly made at Fort Bliss could be removed under federal enclave jurisdiction).

7.   A federal enclave is created where the federal government acquires land by purchase or condemnation with the consent of the state or commonwealth in which the land is located. See Humble Pipe Line v. Waggonner, 376 U.S. 369, 371-72 (1964). "In determining whether a claim arises on a federal enclave, courts have simply looked to see where all the 'pertinent events' took place." Rosseter v. Industrial Light & Magic, 2009 WL 210452, at *2 (N.D. Cal. Jan 27, 2009) (citing Stiefel v. Bechtel Corp., 497 F. Supp. 2d 1138, 1148 (S.D. Cal 2007)).

8.   In this case, all of the acts alleged in the Complaint occurred on a federal enclave owned by the United States of America, Department of the Navy ("Navy"). Plaintiffs resided in military housing located at 132 Cuyamaca Street, Oceanside, California, which is part of the Wire Mountain III neighborhood, as well as in military housing located at 607 Parker Road, Oceanside, California, which is part of the Stuart Mesa neighborhood, within the United States Marine Corps Camp Pendleton jurisdictional boundaries. (Ex. A, Complaint at ¶1; Exhibit 8 to DeHart Decl. [Office of Legal Counsel Opinion re: Camp Pendleton]; Exhibits 5-6 to DeHart Decl. [Camp Pendleton Maps]; Exhibit 7 to DeHart Decl. [Description of Wire Mountain III and Stuart Mesa housing communities as being "on base"]). Plaintiffs have asserted various claims grounded in tort, alleging that they suffered damages when they were exposed to moisture, water intrusion and mold conditions at the home in which they resided. (Ex. A, Complaint, at e.g., ¶¶10-76). All events upon which these claims are based occurred within the jurisdictional boundaries of Marine Corps Camp Pendleton and, in fact, occurred exclusively at Plaintiffs' homes on base. See id. (describing alleged conditions at

1  the home, including complaints of conditions).

2      9.    The property on which Plaintiffs' homes were located in the Wire Mountain III and Stuart Mesa neighborhoods at Camp Pendleton, and other properties surrounding it the San Diego, California, area, was originally ceded to the United States Government from Mexico in the Treaty of Guadalupe Hidalgo of 1848. Treaty of Guadalupe Hidalgo, Art. V, 1848.  (DeHart Decl., Exhibit 1). Section 3 of the California Statehood Act conditioned the State of California's admission to the Union on acknowledgment of, and promise to not interfere with or impair, federal title to public lands.  An Act for the Admission of the State of California into the Union, Thirty-First Congress, Sess. 1, 1850.  (DeHart Decl., Exhibit 2).  By the California Statutes of 1897, chapter 56, the State of California ceded to the United States exclusive jurisdiction over all lands within the State then held, occupied or reserved by the government of the United States for military purposes or defense, or which thereafter would ceded or conveyed to the government of the United States for such purposes.  Cal. Statutes, 1897, Ch. 56. (DeHart Decl., Exhibit 3).  This Court has previously found, in multiple cases, that Camp Pendleton is a federal enclave.  See, e.g., Jamil v. Workforce Res., LLC, 2018 U.S. Dist. Lexis 85066, *5 (S.D. Cal. May 21, 2018) ("Camp Pendleton is a federal enclave."); Shurow v. Gino Morena Enters., LLC, 2017 U.S. Dist. Lexis 66165, *5 (S.D. Cal. May 1, 2017) ("Camp Pendleton is a federal enclave established no later than December 31, 1942"); Stiefel v. Bechtel Corp., 497 F. Supp. 2d 1138, 1145 (S.D. Cal. 2007).  Even the California Court of Appeal for the Fourth District, has found that Camp Pendleton is "a federal enclave where the federal government exercises exclusive jurisdiction," citing the Ninth Circuit. People v. Renteria, 165 Cal. App. 4th 1108, 1115 (2008) (citing United States v. Jenkins, 734 F.2d 1322, 1325 (9th Cir. 1983).  The Office of Legal Counsel of the United States, confirms Camp Pendleton is under exclusive legislative jurisdiction. [Exhibit 8 to DeHart Decl.]  The Subject Properties are undisputedly on base

military housing at Camp Pendleton. [Exhibits 5-7 to DeHart Decl.]

10. Furthermore, under the Lease Agreements at issue, which are explicitly referenced in the Complaint although not attached thereto, the Plaintiffs explicitly agreed "that this Lease and the contractual relationship between the parties shall be construed exclusively in accordance with, and shall be exclusively governed by, federal substantive law…." with only a few select California Civil Code sections which Plaintiffs agreed would also apply. (Ex. 4 to DeHart Decl., Leases, ¶36 (emphasis added)). This also invokes the Supremacy Clause of the United States Constitution with respect to the application of federal law at the Subject Property. U.S. Const., Art. VI, Cl. 2.

11. In October 2021, Lincoln Military Housing announced the creation of an Employee Stock Ownership Plan. With the formation of the ESOP, Lincoln Military became independent of its former parent company, Lincoln Property Company. As such, it transitioned to a new name, Liberty Military Housing, which is now denoted on its website materials, among other places (see, e.g., Exhibit 7). However, as discussed further below, the ground lessor for the Subject Property remains and at all relevant times has been, Camp Pendleton & Quantico Housing LLC, and the property manager for the Subject Property remains, and at all relevant times has been, LPC Pendleton Quantico PM LP, under the new Liberty Military Housing name and umbrella. (DeHart Decl. at ¶ 3).

12. The circumstances in this case are nearly identical to those addressed Federico v. Lincoln Military Housing LLC et al., 901 F. Supp. 2d 654 (E.D. Va. 2012). In that case, military housing tenants filed a complaint against Lincoln Military Housing LLC, Mid-Atlantic Military Family Communities, LLC, and LPC Property Management, Inc., which are affiliates of the Defendants in this case, in Virginia state court. The Federico complaint, similar to this case, asserted tort, as well as statutory, and contract claims, alleging bodily injury and property damages resulting from alleged moisture and mold conditions in their home in

privatized military family housing managed by the defendants.  The <u>Federico</u> defendants timely removed that case to the United States District Court for the Eastern District of Virginia.  The <u>Federico</u> plaintiffs moved to remand the case, asserting that the Enclave Clause did not provide federal jurisdiction over the state claims.

13. On September 21, 2012, the Eastern District of Virginia denied the <u>Federico</u> plaintiffs' motion, finding that the requirements of federal enclave jurisdiction had been satisfied.  After that removal, seven similar actions were removed and consolidated with <u>Federico</u>.  The Court found that it had jurisdiction over the claims under the Enclave Clause because the land on which the plaintiffs resided, was under concurrent federal and state jurisdiction.  <u>Federico</u>, 901 F. Supp. 2d at 670-72.  The Court also held that federal jurisdiction was strengthened because the "case implicate[d] substantial federal interests." <u>Id.</u> at 673.  The Court specifically found that "a review of the Complaint, the facts, the parties, and the nature of the public-private venture reveal that almost everything in this case implicates the United States Navy in one form or another." <u>Id.</u>

14. This case is nearly identical to <u>Federico</u>.  Yet, this case actually presents a stronger case for removal because this property is exclusively federal jurisdiction property, while <u>Federico</u> removed a matter involving concurrent jurisdiction. In both cases, the events at issue arose on a federal enclave owned by the Navy.  In <u>Federico</u>, the defendants were Lincoln Military Housing LLC, Mid-Atlantic Military Family Communities, LLC, and Lincoln Property Company Property Management, Inc.  Like Camp Pendleton Quantico Housing, LLC here, Mid-Atlantic Military Family Communities was the public-private venture ("PPV") for the development and management of multi-family housing for the Navy.  Like LPC Pendleton Quantico PM LP here, Lincoln Property Company Property Management was the property management company retained by the PPV entity. <u>Federico</u>, 901 F. Supp. 2d at 656.

15. In addition, the same "substantial federal interests" found in <u>Federico</u> are present here. This case concerns military housing operated under the Military Housing Private Initiative adopted by Congress in 1996 to improve the quality of service members' housing. 10 U.S.C. §§ 2871-85. Under the Initiative, various branches of the Armed Forces have established PPVs to own, develop and manage military housing. Typically, the military leases land to a private entity selected through a competitive bidding process and enters into a PPV agreement with a branch of the Armed Forces to develop and manage the military housing on it. Service members who reside in the housing receive a Basic Allowance for Housing from the military to pay their rent. As the <u>Federico</u> court found, the Navy exercises significant control and involvement in the operation of the PPV and management of these properties. 901 F. Supp. 2d at 673 (explaining how the Navy "plays a significant role in the operation" of the PPV).

16. As in the <u>Federico</u> case, removal of this action is proper based on this Court's federal question jurisdiction under 28 U.S.C. § 1331. Defendant Camp Pendleton & Quantico Housing, LLC is a PPV. On or about August 1, 2001, the Navy and Hunt Lincoln Clark Family Communities, LLC entered into a separate operating agreement to form Camp Pendleton & Quantico Housing, LLC. Camp Pendleton & Quantico Housing LLC has primary responsibility for managing the military housing in its jurisdiction, including the Subject Property, though important actions (including capital upgrades to the properties) cannot be undertaken without the Navy's consent.

17. There are other key agreements between and among the Navy and certain of the Defendants. On or about August 1, 2001, the Navy and Camp Pendleton & Quantico Housing LLC entered a fifty-year ground lease (the "Ground Lease") for the Wire Mountain III and Stuart Mesa neighborhoods and certain other military housing communities in the San Diego area including those at Camp Pendleton.

18. Pursuant to the Operating Agreement, PPV Camp Pendleton & Quantico Housing, LLC entered into a property management agreement ("Property Management Agreement") with Defendant LPC Pendleton Quantico PM LP, relating to the Wire Mountain III and Stuart Mesa communities at Camp Pendleton which encompasses the Subject Properties. Under the terms of the Property Management Agreement, LPC Pendleton Quantico PM LP acts as an agent of the PPV Camp Pendleton & Quantico Housing, LLC in performing certain property management functions, such as property leasing.

19. Under the terms of the Ground Lease and Operating Agreement relating to the Subject Property, the Navy retained ownership of the land on which the Wire Mountain III and Stuart Mesa communities are located and conveyed ownership of the improvements located on the land to the lessee under the Ground Lease for the term of the Ground Lease. Upon termination of the Ground Lease, all improvements on the land will be abandoned in place and become the property of the Navy as the fee owner of the land.

20. The Operating Agreement and Ground Lease specifies that the land and housing units on it must be used for the governmental purpose of housing military service members and their families. The PPV and LPC Pendleton Quantico PM LP, as the property manager, must offer the housing units first to military service members and their families, and then to Preferred Referrals who work for the Department of Defense, before allowing any civilian to lease a housing unit. The Complaint names as Defendants Camp Pendleton & Quantico Housing, LLC, the PPV entity in which the Navy has an ownership interest which relates to the Subject Property, and LPC Pendleton Quantico PM, LP, the agent that performs certain property management functions for this PPV pursuant to the Property Management Agreement.

21. These claims belong in federal court because the federal government has a strong interest in and will be impacted by the claims in this case. The

1 Enclave Clause of the United States Constitution is a recognition by the Framers
2 that there are some properties in which the federal government has particularly
3 strong interests vis-à-vis the states.  By its terms, the Enclave Clause applies to
4 lands acquired with the states' consent "for the Erection of Forts, Magazines,
5 Arsenals, Dock-Yards, and other needful Buildings."  U.S. Const. Art. I § 8 cl. 17.
6 The federal government had and has strong interests in the capital and the
7 installations that it uses to provide for the common defense.  Plaintiffs' allegations
8 and claims concerning events on a federal enclave, raises the very interests sought
9 to be protected by the Enclave Clause.  Federico, 901 F.Supp.2d at 673-74.

10       22.   The Navy has contractual obligations and proprietary and financial
11 interests that would be affected by the claims and allegations in this case.  The case
12 also may affect the public-private venture agreements that have been adopted by
13 the Navy and implemented by PPVs throughout the country.  In these
14 circumstances, the federal government undoubtedly has a substantial interest in the
15 resolution of the claims raised in this suit.  See Federico, 901 F. Supp. 2d at 673
16 (finding that "[a] review of the Complaint, the facts, the parties, and the nature of
17 the public-private venture reveal that almost everything in this case implicates the
18 United States Navy in one form or another.").  Cf. Nicodemus v. Union Pacific
19 Corp., 440 F.3d 1227, 1236 (10th Cir. 2006) (finding substantial federal interest in
20 land dispute when, as here, federal government had reversionary interest in the
21 land); McMahon v. Presidential Airways, Inc., 410 F. Supp. 2d 1189, 1201 (M.D.
22 Fla. 2006) (finding federal question jurisdiction because case involved federal
23 procurement contract regarding military operations in Afghanistan; "issues
24 involving a government contract and United States military operations are
25 implicated, and substantial contested federal issues are apparent").[2]

---

[2] "The imposition of liability on Government contractors will directly affect the terms of Government contracts:  either the contractor will decline to manufacture the design specified by the Government, or it will raise its price.  Either way, the

-10-

23. Because Plaintiffs' claims are based on alleged acts that occurred on a federal enclave and because the federal government has a substantial interest in that enclave and the claims arising on it, this Court has jurisdiction to hear this controversy pursuant to 28 U.S.C. § 1331.

24. Removal is also appropriate under 28 U.S.C. § 1442(a)(1). The federal officer removal statute authorizes "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" to remove a civil action commenced in state court to federal court in the district in which the case in currently pending. 28 U.S.C. § 1442(a).

25. The federal officer removal statute authorizes "removal of an entire case, even though only one of its controversies [or defendants] might involve a federal officer or agency." Alsup v. 3-Day Blinds, Inc., 435 F. Supp. 2d 838, 844 (S.D. Ill. 2006); see also Morgan v. Huntington Ingalls, Inc., 879 F.3d 602 (5th Cir. 2018); Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 463 (5th Cir. 2016). ("[R]emoval of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute."). The Supreme Court has emphasized that the federal officer removal statute must be liberally construed. See Watson v. Philip Morris Cos., 551 U.S. 142, 147 (2007) ("this Court has made clear that the [federal officer removal] statute must be liberally construed") (internal quotation marks omitted). The Ninth Circuit and District Courts in this Circuit (including this Court) have since repeatedly reiterated this sentiment. Durham v. Lockheed Martin Corp., 445 F.3d at 1252; Fontalvo v. Sikorsky Aircraft Corp., 2013 U.S. Dist. Lexis 87149, at *6; Ballenger v. Aqco, 2007 U.S. Dist. Lexis 47042 (N.D. Cal. 2007).

---

interests of the United States will be directly affected." Boyle v. United Technologies Corp., 487 U.S. 500, 507 (1988).

26. Two separate bases exist for removal under § 1442(a)(1). The first is that the PPV named as a defendant, Camp Pendleton & Quantico Housing LLC, is an agency of the United States under that provision. For purposes of the federal officer removal statute, "[t]he term 'agency' includes . . . any corporation in which the United States has a proprietary interest." 28 U.S.C. § 451. Multiple courts, including the Ninth Circuit, have recognized that corporations that are owned in part by the government qualify as agencies under that definition. See Acron Invs., Inc. v. Federal Sav. & Loan Ins. Corp., 363 F.2d 236, 240 (9th Cir. 1966); also Rauscher Pierce Refsnes, Inc. v. FDIC, 789 F.2d 313, 314 (5th Cir. 1986); Government Nat'l Mortg. Ass'n v. Terry, 608 F.2d 614, 620-21 (5th Cir.1979). Courts have also recognized that LLCs can also qualify for removal under the federal officer removal statute. See, e.g., Takacs v. American Eurocopter, LLC, 656 F.Supp.2d 640, 645 (W.D. Tex. 2009) (finding that an LLC was a "person" under section 1442(a)(1); McGillick v. World Trade Center Properties, LLC, 2004 WL 2049260 at *2 (S.D.N.Y 2004) (same).

27. Here, the United States has a proprietary interest in the named PPV, Camp Pendleton & Quantico Housing LLC, which is the PPV for the Subject Property at issue. The Navy is one of the two members of Defendant Camp Pendleton & Quantico Housing, LLC. Camp Pendleton & Quantico Housing, LLC is an "agency" of the United States entitled to remove this case to federal court under § 1442(a)(1). See City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380, 389-90 (6th Cir. 2007).

28. In addition, removal is proper under 28 U.S.C. § 1442(a)(1) because Defendants Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM, LP, are "person[s] acting under [a federal] officer." Courts generally analyze the question of whether a party is a "person acting under [a federal] officer" within the meaning of § 1442(a)(1) in four steps, asking whether the defendant: (1) is a person within the meaning of the statute; (2) acted under a

-12-

federal officer; (3) has performed the actions for which they are being sued under color of federal office; and (4) raises a colorable federal defense to the Plaintiffs' claims.  Jefferson Cnty. v. Acker, 527 U.S. 423, 431 (1999); Mesa v. California, 489 U.S. 121, 125 (1989); see also Aig Eur. P'ship v. McDonnell Douglas Corp., 2003 U.S. Dist. Lexis 1770 (C.D. Cal. 2003).  Each of those elements is met here.

29.     First, Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM LP, are persons within the meaning of the statute who acted under a federal officer.  Both Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM LP, undoubtedly qualify as a "person" within the meaning of 28 U.S.C. § 1442(a)(1).  See, e.g., 1 U.S.C. § 1 (providing that "the word[] 'person'" in "any Act of Congress" "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies," "unless the context indicates otherwise"); Isaacson v. Dow Chemical Co., 517 F.3d 129, 136 (2d Cir. 2008) (holding that "persons" under the statute includes corporations); Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992) (finding that corporation that built submarines under the supervision of the Navy was a person for the purposes of the federal officer removal statute).

30.     Second, Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM LP, acted under a federal officer.  In Watson, the Supreme Court explained that an entity "acts under" a federal officer when it "assist[s], or help[s] carry out, the duties or tasks of the federal superior."  551 U.S. at 152; see also id. at 151 ("the removal statute applies to private persons who lawfully assist [a] federal officer in the performance of his official duty") (internal quotation marks omitted).  Following Watson's guidance, the Second Circuit held that a chemical company was "acting under" a federal officer for the purposes of removal when it "contracted with the Government to provide a product that the Government was using during war – a product that, in the absence of Defendants, the Government would have had to produce itself."  Isaacson, 517 F.3d at 137.  The

1  Ninth Circuit, and this Court, have similarly recognized that the acting-under
2  requirement is met where a government contractor is acting at the direction of a
3  federal agent or officer, and that no special additional requirements exist to assert
4  this defense.  Durham, 445 F.3d at 1251; Willis v. Buffalo Pumps, Inc., 2013 U.S.
5  Dist. Lexis 46242, **8-9 (S.D. Cal. Mar. 29, 2013).  Likewise, the Sixth Circuit
6  held that a government contractor acted under federal officers when it performed a
7  contract to remove allegedly hazardous mold from a government building – a
8  service that the government otherwise "'would have had to perform'" itself.
9  Bennett v. MIS Corp., 607 F.3d 1076, 1088 (6th Cir. 2010) (quoting Watson, 551
10 U.S. at 154).

11       31.   Just like the defendants in Isaacson, Durham, Willis v. Buffalo
12 Pumps, and Bennett, Camp Pendleton & Quantico Housing LLC and LPC
13 Pendleton Quantico PM LP, "act[ed] under" officers of the Navy.  Pursuant to
14 Congressional authorization, see 10 U.S.C. §§ 2872, 2874-75, the Navy formed
15 and invested in Camp Pendleton & Quantico Housing LLC, which in turn hired
16 LPC Pendleton Quantico PM LP to manage the Subject Properties.  The Navy also
17 leased the land at issue to Camp Pendleton & Quantico Housing, LLC, and
18 continues to own that land which comprises the Subject Properties. (DeHart Decl.,
19 ¶¶ 5-8; Exhs. 1-3, 5-8).  These actions were undertaken to fulfill the governmental
20 function of housing military service members and their families.  The Navy would
21 have had to manage and maintain the Plaintiffs' homes had it not created the PPV,
22 Camp Pendleton & Quantico Housing, LLC, and hired LPC Pendleton Quantico
23 PM LP to perform these services.  As a result, as in Watson, Camp Pendleton &
24 Quantico Housing LLC and LPC Pendleton Quantico PM LP, "acted under" the
25 Navy by "helping and assisting" the Navy carry out its own duties and functions.

26       32.   Third, Camp Pendleton & Quantico Housing LLC and LPC Pendleton
27 Quantico PM LP performed the alleged actions for which they are being sued
28 under the color of federal office.  The "hurdle erected by" the "under color of

-14-
NOTICE OF REMOVAL

office" requirement "is quite low." Isaacson, 517 F.3d at 137. To satisfy that requirement, "Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred while Defendants were performing their official duties." Id. at 137-38. For example, in Bennett, air traffic controllers brought personal injury actions in state court against private mold remediation firms hired by the Federal Aviation Administration ("FAA"), claiming that they had caused cross-contamination of their workplace. 607 F.3d at 1082. One of the mold remediation firms removed the claims against it to federal court on the basis of the federal officer removal statute. Id. at 1084. The court found that the firm had worked under the color of federal office because it performed the work at the direction of the FAA under its contract. Id. at 1091. The court also found that "even if plaintiffs were able to demonstrate that the alleged cross-contamination occurred because of an act not contemplated by [the mold remediation firm's] contracts with the FAA, it is sufficient for our purposes that [the mold remediation firm's] execution of the FAA contracts gave rise to the alleged cross-contamination." Id. at 1088; accord Isaacson, 517 F.3d at 138 ("even if Plaintiffs were to prove that the [allegedly tortious conduct] occurred because of an act not specifically contemplated by the government contract, it is enough that the contracts gave rise to the [conduct]"). Moreover, the court noted that whether the acts were outside the scope of mold remediation firm's official duties or whether it was directed by the FAA was a question that the federal court should resolve rather than the state court. Bennett, 607 F.3d at 1088.

33.  In February 2020, in Latiolais v. Huntington Ingalls, Inc., the Fifth Circuit en banc held that "any civil action that is connected to or associated with an act under color of federal office may be removed." 2020 U.S.App. Lexis 5483, at *17. This follows the Ninth Circuit's expansive reading of this prong of the federal officer removal statute in Goncalves, where it found that a private insurance company administering a plan for a federal government office, satisfied

-15-

the "low bar" of the causal-connection nexus for this prong of section 1442(a) for removal. <u>Goncalves ex. rel. Goncalves v. Rady Children's Hospital San Diego</u>, 865 F.3d 1237, 1244-49 (9th Cir. 2017).

34. In this case, assuming the acts alleged in the Complaint are true, the alleged bodily injuries and property damage arose from Camp Pendleton & Quantico Housing LLC's and LPC Pendleton Quantico PM, LP's performance of their duties to the Navy under the Operating Agreement and Property Management Agreement. Because all of the conduct alleged in the Complaint "occurred <u>while</u> [the PPV and LPC Pendleton Quantico PM LP] were performing their official duties" pursuant to agreements with the Navy, <u>Isaacson</u>, 517 F.3d at 137-38, the "under color of office" requirement is met here. See also <u>Corley v. Long-Lewis, Inc.</u>, 688 F. Supp. 2d 1315, 1334-35 (N.D. Ala. 2010) ("All a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy.").

35. Fourth, Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM, LP, have two colorable federal defenses: (1) the government contractor defense; and (2) the derivative sovereign immunity defense. As the Supreme Court has noted, for the purposes of removal under 28 U.S.C. § 1442, a defendant need not show that the defense is meritorious, but rather that it has plausible grounds for the defense. See <u>Mesa v. California</u>, 489 U.S. 121, 128-29 (1989); <u>see also</u> <u>Ellis v. Pneumo Abex Corp.</u>, 798 F. Supp. 2d 985, 990 (C.D. Ill. 2011) (finding that it is not the court's role "to consider the merits of the defense or its probability of success" only whether the defense is "plausible"); <u>Bennett</u>, 607 F.3d at 1090-91 (same); <u>Isaacson</u>, 517 F.3d at 139 (same).

36. Under the government contractor defense, a defendant is not liable for alleged tortious conduct if: (1) the government approved reasonably precise specifications and procedures; (2) defendants conformed to those specifications and procedures; and (3) the defendants warned the government of risks of which

the government was unaware. Boyle v. United Technologies Corp., 487 U.S. 500 (1988). The government contractor defense applies here because Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM, LP discharged their duties relating to the housing in the Wire Mountain III and Stuart Mesa Camp Pendleton neighborhoods in accordance with the "reasonably precise standards" in both the Operating Agreement and the Property Management Agreement.

37. In addition, Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM, LP can assert a colorable federal defense based on derivative sovereign immunity. Under this defense, a contractor performing at the direction and authorization of a government officer is immune from suit and/or entitled to the defense, based upon performance of a contract. See Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940) ("if this authority to carry out the project was validly conferred, that is, if what was done within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will."). To this end, in denying the plaintiffs' motion to remand, the court in Federico found that the Navy had "meaningful control over the operations of [the PPV] Mid-Atlantic and the management of housing communities formerly run exclusively by the Navy. The agreements governing Mid-Atlantic make it clear that the Navy exercises control and influence over the policies and procedures concerning military housing in the enclave." Federico, 901 F. Supp. 2d at 674. Following Yearsley, in 2016, the United States Supreme Court in Campbell v. Ewald-Gomez, 136 S.Ct. 663, 673 (2016), recognized that federal government contractors have immunity when they act within the law pursuant to the authority "validly conferred" to them by the United States government. Even more recently, in Cunningham v. General Dynamics Information Technology Inc., the Fourth Circuit upheld the dismissal of claims against a defendant government contractor based on derivative immunity, where the government authorized the defendant's actions and the government validly conferred that authority. 888 F.3d 640, 646-

650 (4th Cir. 2018).

38. This defense applies here because the acts about which Plaintiffs complain were performed by Camp Pendleton & Quantico Housing, LLC and LPC Pendleton Quantico PM LP in accordance with the terms of a contract(s) with the Navy. Camp Pendleton & Quantico Housing, LLC, the named PPV, was formed by the Navy pursuant to congressional authorization under the Military Housing Privatization Initiative. If the Navy had performed the acts alleged in the Complaint directly, it would be immune from suit. See, e.g., Mangold v. Analytic Servs., 77 F.3d 1442, 1448 (4th Cir.1996) (noting that contractors acting on behalf of federal officials "exercising discretion while acting within the scope of their employment" have "absolute immunity from state law tort liability" because imposing state tort liability would "impair the willingness of contractors to bid on government contracts and hamper the government's ability to operate efficiently") (citing Barr v. Matteo, 360 U.S. 564, 569-73 (1959)); Myers v. United States, 323 F.2d 580, 583 (9th Cir. 1963) ("To the extent that the work performed by [the defendant] was done under its contract with the Bureau of Public Lands, and in conformity with the terms of said contract, no liability can be imposed upon it for any damages claimed to have been suffered by the appellants."); TWI v. CACI Int'l, Inc., 2007 WL 3376661, at *3 (E.D. Va. Nov. 9, 2007) (finding defendant that secured and facilitated solicitations on behalf of the government was "immune from state tort liability for discretionary actions performed within the scope of employment"); Green v. ICI Am., Inc., 362 F. Supp. 1263, 1266 (E.D. Tenn. 1973) (defendant that contracted with the federal government to operate an ammunition plant was allowed to share sovereign immunity of the United States because plant was owned by the federal government and the products produced at it were intended for government use).

39. Defendants have timely removed this action because they filed this Notice of Removal within thirty days of being served the Complaint. 28 U.S.C. §

-18-
NOTICE OF REMOVAL

1446(b)(1).

40. The Superior Court for the County of San Diego is located in the jurisdictional area of the United States District Court for the Southern District of California. Accordingly, this Court is the proper Court to which to remove this action.

41. Pursuant to 28 U.S.C. § 1446(a), Defendants are required to attach to this Notice "a copy of all process, pleadings, and orders served upon" them. Accordingly, Defendants attach as Exhibit A to this Notice, the Summons(es), Application and Order for Appointment of Guardian ad Litem, Notice of Case Assignment and ADR information, filed in San Diego County Superior Court as served upon them.

42. The Defendants all join in and consent to this removal.

43. A copy of the written notice required by 28 U.S.C. § 1446(d) addressed to Plaintiffs' counsel and to the Clerk of the Superior Court for the County of San Diego is attached as Exhibit B to this Notice of Removal. It will be filed with that Clerk and, along with this Notice of Removal, will be served on Plaintiffs after the filing of this Notice of Removal.

WHEREFORE, Defendants hereby remove the pending state court action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§1331, 1441, 1442 and 1446.

Dated: May 5, 2022

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ Kristin N. Reyna DeHart
Kristin N. Reyna DeHart
Timothy A. Hanna
Angela M. Hampton
Attorneys for Defendants
CAMP PENDLETON & QUANTICO HOUSING, LLC and LPC PENDLETON QUANTICO PM LP

-19-
NOTICE OF REMOVAL