# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
04/06/2022
CT Log Number 541357151

**TO:** Kim Ellis
LIBERTY MILITARY HOUSING
2100 INDEPENDENCE BLVD
VIRGINIA BEACH, VA 23455-2777

**RE:** **Process Served in California**

**FOR:** Camp Pendleton & Quantico Housing, LLC  (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ANNA MASLANKOWSKI,an individual; THOMAS MASLANKOWSKI,an individual; ▮▮▮▮▮▮▮ by and through their guardian ad litem JUSTYNA LINDAHL; ▮▮▮▮▮▮ ,a minor, by and through their guardian ad litem JUSTYNA LINDAHL vs. CAMP PENDLETON & QUANTICO HOUSING,LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 37202200002460CUPOCTL |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/06/2022 at 12:46 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air<br><br>Image SOP<br><br>Email Notification,  Justin Clancy  jclancy@livelmh.com<br><br>Email Notification,  Kim Ellis  kellis@livelmh.com<br><br>Email Notification,  Jennifer Simmons  jennsimmons@livelmh.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-467-3525<br>SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Wed, Apr 6, 2022
**Server Name:**                   Kristina Keshishian

| Entity Served | CAMP PENDLETON & QUANTICO HOUSING, LLC |
|---|---|
| Case Number | 37-2022-00002460-CU-PO-CTL |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** CAMP PENDLETON & QUANTICO HOUSING, *(AVISO AL DEMANDADO):* LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; LINCOLN MILITARY PROPERTY MANAGEMENT LP, a Delaware limited partnership; and Additional Parties Attachment form is attached.<br><br>**YOU ARE BEING SUED BY PLAINTIFF:** ANNA MASLANKOWSKI, an *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individual; THOMAS MASLANKOWSKI, an individual; ▮▮▮▮▮▮▮▮ by and through their guardian ad litem JUSTYNA LINDAHL; ▮▮▮▮▮▮▮▮ , a Additional Parties Attachment form is attached. | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/05/2022** at 11:19:11 AM<br>Clerk of the Superior Court<br>By Erika Engel,Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of San Diego 1100 Union Street<br>San Diego, California  92101 | CASE NUMBER:<br>*(Número del Caso):* 37-2022-00002460-CU-PO-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Lenden F. Webb
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
WEBB LAW GROUP, APC
10509 Vista Sorrento Pkwy Suite 450, San Diego CA 92121

| DATE:<br>*(Fecha)* 01/21/2022 | Clerk, by<br>*(Secretario)* *E. Emel* E. Engel | (559) 431-4888 , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Camp Pendleton & Quantico Housing LLC

    under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
           ☑ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>Westlaw Doc & Form Builder® |
|---|---|---|

SUM-200(A)

| SHORT TITLE: Anna Maslankowski v. Lincoln Military Housing, et. al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

DOES 1 THROUGH 50, inclusive;

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder™

SUM-200(A)

| SHORT TITLE: Anna Maslankowski v. Lincoln Military Housing, et. al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[X] Plaintiff     [ ] Defendant     [ ] Cross-Complainant     [ ] Cross-Defendant

minor, by and through their guardian ad litem JUSTYNA LINDAHL;

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder™

 **CT Corporation**

**Service of Process Transmittal**
04/06/2022
CT Log Number 541357108

**TO:**  Kim Ellis
LIBERTY MILITARY HOUSING
2100 INDEPENDENCE BLVD
VIRGINIA BEACH, VA 23455-2777

**RE:**  **Process Served in California**

**FOR:**  LPC Pendleton Quantico PM LP  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ANNA MASLANKOWSKI, an individual; THOMAS MASLANKOWSKI, an individual; ▮▮▮▮ by and through their guardian ad litem JUSTYNA LINDAHL; ▮▮▮▮, a minor; by and through their guardian ad litem JUSTYNA LINDAHL vs. CAMP PENDLETON & QUANTICO HOUSING, LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 37202200002460CUPOCTL |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/06/2022 at 12:46 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air<br><br>Image SOP<br><br>Email Notification,  Justin Clancy  jclancy@livelmh.com<br><br>Email Notification,  Kim Ellis  kellis@livelmh.com<br><br>Email Notification,  Jennifer Simmons  jennsimmons@livelmh.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-467-3525<br>SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Wed, Apr 6, 2022
**Server Name:**                   Kristina Keshishian

| | |
|---|---|
| Entity Served | LPC PENDLETON QUANTICO PM LP |
| Case Number | 37-2022-00002460-CU-PO-CTL |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** CAMP PENDLETON & QUANTICO HOUSING, *(AVISO AL DEMANDADO):* LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; LINCOLN MILITARY PROPERTY MANAGEMENT LP, a Delaware limited partnership; and Additional Parties Attachment form is attached. **YOU ARE BEING SUED BY PLAINTIFF:** ANNA MASLANKOWSKI, an *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individual; THOMAS MASLANKOWSKI, an individual; ▮▮▮▮▮▮▮▮▮ by and through their guardian ad litem JUSTYNA LINDAHL; ▮▮▮▮▮▮▮▮▮▮▮, a Additional Parties Attachment form is attached. | **FOR COURT USE ONLY** *(SOLO PARA USO DE LA CORTE)* <br><br> **ELECTRONICALLY FILED** Superior Court of California, County of San Diego <br> **01/05/2022** at 11:19:11 AM <br> Clerk of the Superior Court <br> By Erika Engel, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California, County of San Diego 1100 Union Street San Diego, California 92101 | **CASE NUMBER:** *(Número del Caso):* 37-2022-00002460-CU-PO-CTL |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Lenden F. Webb
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
WEBB LAW GROUP, APC
10509 Vista Sorrento Pkwy Suite 450, San Diego CA 92121                                   (559) 431-4888

| DATE: *(Fecha)* 01/21/2022 | Clerk, by *(Secretario)* E. Engel | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* LPC Pendleton Quantico PM LP

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☑ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov Westlaw Doc & Form Builder™

**SUM-200(A)**

| SHORT TITLE: Anna Maslankowski v. Lincoln Military Housing, et. al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

| ☐ Plaintiff | ☒ Defendant | ☐ Cross-Complainant | ☐ Cross-Defendant |

DOES 1 THROUGH 50, inclusive;

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder™

SUM-200(A)

| SHORT TITLE: Anna Maslankowski v. Lincoln Military Housing, et. al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[X] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

minor, by and through their guardian ad litem JUSTYNA LINDAHL;

Page __1__ of __1__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Christian B. Clark      SBN: 330380
WEBB LAW GROUP, APC
10509 Vista Sorrento Pkwy, Suite 450, San Diego CA 92121
TELEPHONE NO.: (559) 431-4888      FAX NO. (Optional): (559) 821-4500
E-MAIL ADDRESS: office@webblawgroup.com
ATTORNEY FOR (Name): Anna Maslankowski, et al.

FOR COURT USE ONLY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/05/2022** at 11:10:11 AM

Clerk of the Superior Court
By Erika Engel,Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 1100 Union Street
MAILING ADDRESS: 1100 Union Street
CITY AND ZIP CODE: San Diego, 92101
BRANCH NAME: Central Courthouse

CASE NAME: Anna Maslankowski et al. v. Camp Pendleton and Quantico Housing, LLC et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2022-00002460-CU-PO-CTL |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) / [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder / Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Katherine Bacal / DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [X] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): 12
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 30, 2021

Christian B. Clark
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]      **CIVIL CASE COVER SHEET**      Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business Practice (07)
  Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

Lenden Webb, Esq. (236377)
Christian B. Clark, Esq. (330380)
**WEBB LAW GROUP, APC**
10509 Vista Sorrento Pkwy, Suite 450
San Diego, CA 92121
Telephone: (559) 431-4888
Facsimile: (559) 821-4500
Email: LWebb@WebbLawgroup.com
Email: CClark@WebbLawGroup.com

Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/05/2022** at 11:19:11 AM

Clerk of the Superior Court
By Erika Engel,Deputy Clerk

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| ANNA MASLANKOWSKI, an individual; THOMAS MASLANKOWSKI, an individual; ▮▮▮▮▮▮▮▮▮ by and through their guardian ad litem JUSTYNA LINDAHL; ▮▮▮▮▮▮ ▮▮▮▮▮▮, a minor, by and through their guardian ad litem JUSTYNA LINDAHL; <br><br> Plaintiff, <br><br> v. <br><br> CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; and DOES 1 THROUGH 50, inclusive; <br><br> Defendants. | CASE NO. 37-2022-00002460-CU-PO-CTL <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **1. NEGLIGENCE** <br> **2. NUISANCE** <br> **3. NEGLIGENT MISREPRESENTATION** <br> **4. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** <br> **5. BREACH OF IMPLIED WARRANTY OF HABILITABILITY** <br> **6. BREACH OF IMPLIED COVENANT OF QUIET USE AND ENJOYMENT** <br> **7. RENT ABATEMENT** <br> **8. GROSS NEGLIGENCE** <br> **9. PREMISES LIABILITY** <br> **10. FRAUD – CONCEALMENT** <br> **11. CONSTRUCTIVE (WRONGFUL) EVICTION** <br> **12. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

///

///

---

**COMPLAINT**

- 1 -

**PARTIES**

1.      Plaintiff ANNA MASLANKOWSKI is an individual and at all times mentioned in this complaint was a resident of San Diego County, California and resided at 132 Cuyamaca Street, Oceanside, California 92058 ("Leased Property").

2.      Plaintiff THOMAS MASLANKOWSKI is an individual and at all times mentioned in this complaint was a resident of San Diego County, California and resided at the Leased Property.

3.      Plaintiff ████████████████, a minor, by and through their guardian ad litem, JUSTYNA LINDAHL, is an individual and at all times mentioned in this complaint was a resident of Oceanside, California and resided at the Leased Property.

4.      Plaintiff ████████████████, a minor, by and through their guardian ad litem, JUSTYNA LINDAHL, is an individual and at all times mentioned in this complaint was a resident of Oceanside, California and resided at the Leased Property.

5.      Plaintiffs are informed and believe and thereon allege that Defendant CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company, hereinafter "CPQH," at all relevant times was and is a foreign limited liability company registered and authorized to do business, and was and is doing business, in the State of California, and participated in the ownership, management, leasing, maintenance, and/or attempted and negligent repair of the Leased Property.  Plaintiffs are informed and believe and thereon allege that at all relevant times CPQH was the owner, landlord, and/or lessor of the Leased Property.

6.      Plaintiffs are informed and believe and thereon allege that Defendant LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership, hereinafter "LPC PENDLETON," at all relevant times was and is a foreign limited partnership registered and authorized to do business, and was and is doing business, in the State of California, and participated in the ownership, management, leasing, maintenance, and/or attempted and negligent repair of the Leased Property.  Plaintiffs are informed and believe and thereon allege that at all relevant times

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 2 -

1   LPC PENDLETON was the agent for CPQH with respect to ownership, management, leasing,

2   maintenance, and/or attempted and negligent repair Leased Property.

3       7.      The true names and capacities, whether individual, corporate, associate, or

4   otherwise of Defendants designated as DOES 1 THROUGH 50 inclusive are unknown to Plaintiffs

5   who therefore sue said Defendants by such fictitious names. Plaintiffs will amend this complaint

6   to set forth such Defendants' true names and capacities, together with the appropriate charging

7   allegations, when the same have been ascertained. Plaintiffs are informed and believe and based

8   thereon allege that Defendants DOES 1 THROUGH 50, inclusive, were and are qualified to do

9   business in the State of California and are responsible to Plaintiff thus far on the facts and theories

10  herein alleged.

11      8.      Plaintiffs are informed and believe and based thereon allege that each Defendant

12  and each Defendant sued as DOE Defendants, was acting for itself or as an agent, servant, partner,

13  employee, or on behalf of a co-Defendant, in doing the things mentioned and alleged in this

14  complaint and was acting in the scope of his or her authority as such an agent, servant, partner,

15  employee, or co-Defendants or otherwise with the permission and consent of his or her co-

16  Defendants.

17      9.      The lease agreement mentioned in this Complaint was entered into and to be

18  performed in the City of San Diego, County of San Diego, State of California, and the Plaintiffs

19  and Defendants at all times relevant herein reside and/or resided and/or are located and performed

20  significant business in the County of San Diego, State of California.

21                          **FACTUAL ALLEGATIONS**

22      10.     Plaintiffs lived at and occupied the Leased Property as tenants during the period of

23  November 17, 2017 through October 23, 2019.

24      11.     Plaintiffs are former residents and tenants of the Leased Property under a written

25  lease agreement ("Lease") executed by Defendants (*collectively referred to hereinafter as*

26  "LINCOLN MILITARY HOUSING") as owners/agents of the Leased Property. The lease was

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1  signed on or about November, 2017. Under the terms of the Lease, Plaintiffs paid rent, and other

2  fees and costs.

3      12.    The Lease expressly acknowledges that the residential use of the Leased Property

4  was for Plaintiffs.

5      13.    LINCOLN MILITARY HOUSING failed to provide or maintain a reasonably

6  habitable environment for Plaintiffs, despite repeated fraudulent representations of habitability,

7  upon which Plaintiffs were intended to rely and in fact did rely.

8      14.    Shortly after moving into the Leased Property, Plaintiffs began to notice that their

9  family was getting sick much more frequently then before. The family consistently felt cold and

10  flu-like symptoms like coughs, colds, and sore throat.

11      15.    In particular Plaintiff Anna Maslankowski also began to experience worsening

12  allergies, congestion, and constant shortness of breath. Further, Plaintiff Anna Maslankowski

13  experienced trouble waking up and staying awake, low energy throughout the day, anxiety,

14  nervousness, depression, mood changes, and frequent headaches and coughs.

15      16.    In particular, Plaintiff Thomas Maslankowski also experienced constant headaches

16  and coughs during the time period.

17      17.    Plaintiffs noticed that they immediately started to feel better whenever they left the

18  home for a few days, such as on vacations, and began to piece together that the symptoms they

19  were experiencing could have been caused by environmental factors within the home.

20      18.    Plaintiffs raised the issue of possible mold in the home to LINCOLN MILITARY

21  HOUSING representatives on multiple occasions throughout 2017 and 2018. However, these

22  concerns were ignored and dismissed. LINCOLN MILITARY HOUSING representatives told

23  Plaintiffs that there was no visible mold on the Leased Property.

24      19.    In Spring 2018, Plaintiff Anna Maslankowski was prescribed an Epipen, and was

25  told she had developed numerous severe allergies to various stimuli that had not caused Plaintiff

26  Anna Maslankowski such allergic reactions previously. Plaintiff Anna Maslankowski felt her

27  throat close up on one occasion in Spring 2018 due to an allergic reaction, and broke out in hives

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1   on another occasion. At the time, Plaintiff Anna Maslankowski was told she had allergic reactions

2   cause by pet dander and red dye. Plaintiff Anna Maslankowski suspected it was actually due to

3   conditions in the Leased Property, but the treating physicians at the Naval Hospital dismissed her

4   concerns.

5       20.     Between the Spring of 2018 and the Spring of 2019, Plaintiffs continued to

6   experience severe cold and flu-like symptoms on an extremely frequent basis. Plaintiff Anna

7   Maslankowski developed multiple cases of strep throat, and eventually had her tonsils removed in

8   the Spring of 2019.

9       21.     On or around March 17, 2019, Plaintiffs' water heater broke on the Leased Property

10  and immediately informed LINCOLN MILITARY HOUSING representatives. LINCOLN

11  MILITARY HOUSING representatives came to replace the water heater, but in the process spilled

12  water all around the floor and baseboards of the drywall. LINCOLN MILITARY HOUSING never

13  attempted to fix or clean the mess they made. In later October, 2019 Plaintiffs noticed the area

14  around the water heater, where LINCOLN MILITARY HOUSING had spilled water, was

15  completely covered in mold.

16      22.     On or around June, 2019 Plaintiffs found visible mold in the rafters of the garage

17  on the Leased Property. Plaintiffs immediately contacted LINCOLN MILITARY HOUSING, but

18  LINCOLN MILITARY HOUSING did nothing to follow-up on the issue in any way.

19      23.     In August 2019, Plaintiff Anna Maslankowski began to experience hallucinations

20  in the home when laying in bed in the master bedroom of the Leased Property. Plaintiffs soon

21  discovered that visible mold was present all around the master bedroom window near the bed.

22  Plaintiffs called LINCOLN MILITARY HOUSING immediately. This was the second time

23  Plaintiffs reported visible mold on the windows to LINCOLN MILITARY HOUSING.

24      24.     On information and belief, LINCOLN MILITARY HOUSING did not come out to

25  inspect the reported issue until on or around October 3, 2019. On or around October 3, 2019

26  LINCOLN MILITARY HOUSING sent an employee named Mark Mitchell (on information and

27  belief Mark is currently in charge of mold remediation for Defendants). Mark completely

28

*WEBB LAW GROUP, APC*
*466 West Fallbrook Avenue, Suite 102*
*Fresno, California 93711*

**COMPLAINT**
- 5 -

1   dismissed Plaintiffs' concerns despite the visible mold, and despite the fact that Plaintiffs had
2   raised the issue of mold on the windows to LINCOLN MILITARY HOUSING previously. On that
3   date, Mark took a moisture reading of the window, and told Plaintiffs not to worry because his
4   finger had a higher moisture reading.

5       25.   In September 2019, Plaintiffs returned from a vacation and found that the lining on
6   their fridge was covered in mold. Plaintiffs immediately called LINCOLN MILITARY HOUSING
7   to report the concerns. LINCOLN MILITARY HOUSING removed the fridge, which revealed
8   that the wall behind the fridge, near the piping connected to the fridge, had many sections covered
9   in black fuzzy mold.

10       26.   On information and belief, on or around September 19, 2019, Plaintiff Anna
11   Maslankowski posted her concerns regarding the mold on the Leased Property in a Facebook
12   group. On information and belief, LINCOLN MILITARY HOUSING received notice of this post
13   from a LINCOLN MILITARY HOUSING volunteer. The district manager came to the Leased
14   Property and affirmatively represented to Plaintiffs that it was just dirt. However, due to the smell,
15   texture, and location of the black substance, Plaintiffs knew this was a lie. This was the third time
16   Plaintiffs found visible mold on the Leased Property, and LINCOLN MILITARY HOUSING
17   refused to assist in any way.

18       27.   Since LINCOLN MILITARY HOUSING refused to take any action, and despite
19   LINCOLN MILITARY HOUSING's affirmative misrepresentations, Plaintiffs began
20   investigating independently. Plaintiffs discovered black mold all throughout the kitchen, especially
21   along the baseboards and cabinets.

22       28.   Plaintiffs immediately called LINCOLN MILITARY HOUSING, and a LINCOLN
23   MILITARY HOUSING representative came to the Leased Property. The LINCOLN MILITARY
24   HOUSING representative removed the baseboard which revealed a mouse nest and more visible
25   black mold. The baseboard itself immediately snapped due to excessive moisture. Once again, the
26   LINCOLN MILITARY HOUSING representative represented to Plaintiffs that the substance was
27   just dirt.

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

29.     Despite representing that the substance behind the baseboards was just dirt, LINCOLN MILITARY HOUSING also represented that they would contact a specialist. LINCOLN MILITARY HOUSING did not take any safety precautions and left Plaintiffs and the home exposed to the black mold for days.

30.     After a few days, Plaintiffs had not heard anything from LINCOLN MILITARY HOUSING. Plaintiffs realized that the LINCOLN MILITARY HOUSING district office was not following-up on the issue in any way, and decided to contact the regional office directly. Plaintiffs contacted Fran Gatlin from LINCOLN MILITARY HOUSING's regional office. LINCOLN MILITARY HOUSING arranged for a specialist to come to the home.

31.     The specialist discovered high moisture readings throughout the entire home, and told Plaintiffs that they should not live in the Leased Property unless it was completely remediated. The specialist also told Plaintiffs that the specialist would inform LINCOLN MILITARY HOUSING that full remediation was necessary, and that Plaintiffs should not live in the home until the repairs took place.

32.     Plaintiffs requested a copy of the specialist's report on multiple occasions, but LINCOLN MILITARY HOUSING failed to provide Plaintiffs a copy.

33.     On information and belief, Plaintiff Thomas Maslankowski's command at the Marine Corps. also requested a copy of the specialist's report, but no copy was ever provided.

34.     After the specialist made this report and recommendation, LINCOLN MILITARY HOUSING did not take any action of any kind. Plaintiffs continued to live in the Leased Property despite the visible black mold and high moisture readings throughout the home. Plaintiffs continued to suffer from various physical and psychological ailments including but not limited to cold and flu-like symptoms, anxiety, stress, depression, and paranoia. Additionally, Plaintiffs noticed a musty smell throughout the home, which on information and belief was caused by the high moisture and mold on the Leased Property.

35.     On October 16, 2019 Plaintiff Anna Maslankowski had a severe episode of disassociation and hallucination, and was rushed to the Emergency Room. Plaintiff Anna

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1    Maslankowski told the physicians at the Naval Hospital that she believed the symptoms were due
2    to mold exposure, but the doctors dismissed her concerns and represented that she was just having
3    an anxiety attack.

4           36.    On or around October 2019, Plaintiffs took ███████████████ to the
5    Naval Hospital to request testing for mold toxicity. The physicians at the Naval Hospital told
6    Plaintiffs that there was no way to test for mold exposure, and that mold did not affect children.

7           37.    On or around October 2019, Plaintiff Anna Maslankowski was referred to an
8    allergist outside of the Naval medical system that confirmed Plaintiff Anna Maslankowski had
9    developed various allergies, including an allergy to most molds.

10          38.    On October 22, 2019 LINCOLN MILITARY HOUSING finally moved Plaintiffs
11   from the Leased Property to a new home at 607 Parker Road, Oceanside, California 92058
12   (*hereinafter referred to as the "Parker Home"*).

13          39.    Shortly after signing the lease, Plaintiff Anna Maslankowski contacted the prior
14   tenant of the Parker Home, who indicated that they were moved out of the Parker Home due to
15   mold.

16          40.    Plaintiffs immediately contacted Fran Gatlin, and had a meeting with Fran Gatlin
17   and Elvira Martinez from LINCOLN MILITARY HOUSING regarding the mold issue at the
18   Parker Home. Ms. Gatlin and Ms. Martinez affirmatively represented to Plaintiffs that the mold at
19   the Parker Home was due to the uncleanliness of the prior owner, and that nothing was wrong with
20   the Parker Home.

21          41.    Plaintiffs were provided 3 days to move from the Leased Property to the Parker
22   Home, and were forced to throw out many personal items and effects that had been exposed to
23   mold. Plaintiffs also noticed that the area around the water heater had completely covered in mold,
24   on information and belief due to the poor job LINCOLN MILITARY HOUSING had previously
25   done installing the water heater.

26          42.    Upon moving into the Parker Home in late October, 2019, Plaintiffs immediately
27   noticed a difference in their health and wellbeing. Plaintiffs began to experience cold and flu-like

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1    symptoms much less frequently. Plaintiff Anna Maslankowski noticed she no longer had

2    hallucinations, and had significantly more energy.

3         43.      After a few months, however, Plaintiff Anna Maslankowski found mold around the

4    French windows of the master bedroom, and had an allergy attack. Plaintiffs cleaned the mold

5    immediately.

6         44.      In March, 2020 LINCOLN MILITARY HOUSING representatives came to the

7    Parker Home to paint the exterior of the home and to power wash the carpet in the master bedroom

8    and dining room. Plaintiffs noticed that the home began to flood due to the water being used both

9    on the outside and inside of the home. Plaintiffs immediately notified LINCOLN MILITARY

10    HOUSING, and a LINCOLN MILITARY HOUSING representative was sent to the Parker Home

11    address the issue.

12         45.      When the LINCOLN MILITARY HOUSING representative arrived, Plaintiffs

13    realized that the flooding issue was more widespread than just the water intrusion caused by the

14    power washers. Plaintiffs and the LINCOLN MILITARY HOUSING representative noticed mold

15    underneath a suitcase next to the front door of the Parker Home, and noticed mold under a dresser

16    in the home.

17         46.      The LINCOLN MILITARY HOUSING staff member sprayed the areas with some

18    kind of chemical spray and set up fans in the home. The LINCOLN MILITARY HOUSING

19    representative further represented to Plaintiffs that they would hire a vendor to fix the carpets.

20         47.      A few days later a vendor hired by LINCOLN MILITARY HOUSING

21    representative came to the Parker House to fix the doors, which on information and belief had been

22    built improperly and allowed water to intrude into the home every time kit rained.

23         48.      Despite finding visible mold in the Parker Home, and despite representing to

24    Plaintiffs that they would hire a vendor to fix the carpeting, LINCOLN MILITARY HOUSING

25    took no further action of any kind.

26         49.      On or around July 7, 2020, Plaintiff Anna Maslankowski was cleaning out her

27    closet in the master bedroom and noticed that mold was growing all over the carpet, shelving, and

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1  clothing in the area. Plaintiff Maslankowski began to have an allergy attack because, on

2  information and belief, due to her contact with the moldy items and surfaces.

3       50.    Plaintiffs immediately contacted LINCOLN MILITARY HOUSING, and

4  specifically called Elvira Martinez from LINCOLN MILITARY HOUSING. Plaintiffs continued

5  to investigate while they waited for LINCOLN MILITARY HOUSING representatives to arrive

6  at the Parker Home, and they noticed that mold had also grown around the baseboards and door.

7  The LINCOLN MILITARY HOUSING representative then wiped down some of the surfaces with

8  a cleaning solution.

9       51.    Plaintiff Anna Maslankowski was pregnant during the period of tenancy at the

10  Parker Home, and was extremely anxious about living in yet another mold-infested home during

11  her pregnancy.

12       52.    Later that day, LINCOLN MILITARY HOUSING representatives arrived and took

13  moisture readings. Plaintiffs were told by the LINCOLN MILITARY HOUSING representative

14  that the area in the closet, and near the baseboards near the door had high moisture readings.

15       53.    Plaintiffs told Elvira Martinez that they would need to get rid of all the personal

16  items and effects that had been found covered in mold. Elvira Martinez affirmatively represented

17  to Plaintiffs that the mold was simply environmental, despite previously representing that the mold

18  the prior tenant experienced at the Parker House was due to the prior tenant's poor housekeeping.

19  Elvira Martinez also represented to Plaintiffs that they should contact their insurance about the

20  mold damaged items. Plaintiffs contacted their insurance provider, but were told that the insurance

21  company could not assist as the insurance company felt LINCOLN MILITARY HOUSING was

22  at fault for negligence and for not changing the carpet in the Leased Property as they promised to

23  do months prior.

24       54.    Plaintiffs told Elvira Martinez what their insurance provider had told them, and

25  Elvira Martinez put Plaintiffs into contact with LINCOLN MILITARY HOUSING's insurance

26  company, but no resolution was ever reached.

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 10 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1    55.    Due to the mold infestation in the master bedroom of the Parker Home, Plaintiffs

2 were forced to sleep on a pull-out couch in the nursery. Plaintiffs were forced to live in the Parker

3 Home while LINCOLN MILITARY HOUSING worked in the master bedroom. LINCOLN

4 MILITARY HOUSING representatives scattered Plaintiffs' personal items and effects randomly

5 throughout the house during the period in which repairs were being made, including personal items

6 that were covered in mold.

7    56.    LINCOLN MILITARY HOUSING had a microbial expert come to the Parker

8 Home, but despite Plaintiffs' multiple requests, LINCOLN MILITARY HOUSING never

9 provided Plaintiffs a copy of the report generated from the visit.

10    57.    On or around July 14, 2020 a flooring vendor hired by LINCOLN MILITARY

11 HOUSING came to the Parker Home to replace the carpeting. On or around July 17, 2020 Plaintiffs

12 were finally able to move back into their master bedroom.

13    58.    Not once during the repairs and remediation that took place in the Parker Home

14 were Plaintiffs told to leave for their safety, nor was the master bedroom ever properly contained.

15    59.    In the Summer of 2020 Plaintiffs noticed mice, rats, and ants throughout the Parker

16 Home and garage. Plaintiffs reported the issue to LINCOLN MILITARY HOUSING immediately,

17 but were forced to live in a home with severe rodent and pest issues.

18    60.    On or around July 24, 2020 Plaintiff Anna Maslankowski once again noticed water

19 damage in the closet of the master bedroom after the remediation had supposedly been completed.

20 Plaintiffs contacted LINCOLN MILITARY HOUSING and Elvira Martinez immediately. The

21 area was taped off and LINCOLN MILITARY HOUSING representatives indicated that they

22 would conduct testing.

23    61.    LINCOLN MILITARY HOUSING representatives told Plaintiffs they would need

24 to continue living in the Parker Home while repairs and testing were conducted despite the fact

25 that, once again, a water intrusion issue was discovered. On information and belief, the Navy

26 government housing office intervened and advocated for Plaintiffs to be placed into temporary

27 housing while the repairs took place.

28

1   62.   That evening LINCOLN MILITARY HOUSING told Plaintiffs they would be

2   placed in a hotel as a courtesy, and that they could return to the Parker Home at any time to grab

3   any items they needed. The next morning Plaintiffs were informed by LINCOLN MILITARY

4   HOUSING representatives that the Parker Home would be locked and that they would not be

5   allowed access while the repairs took place. Plaintiffs were forced to pack in a matter of hours to

6   get all the items needed for a stay at a hotel for an unknown amount of time.

7   63.   Plaintiffs arrived at the hotel LINCOLN MILITARY HOUSING booked for them,

8   and immediately noticed the room was extremely dirty. Plaintiffs discovered that the bathroom

9   didn't work properly, and that the hotel was in an unsafe area. Plaintiffs were extremely concerned

10   given that Plaintiff Anna Maslankowski was nearing the due date for her pregnancy, and given

11   that the COVID-19 pandemic had severely impacted the region.

12   64.   On July 26, 2020 Anna Maslankowski thought she was going into labor, and

13   Plaintiffs attempted to rush to the hospital. Plaintiffs were far from the military base and naval

14   hospital, and were stuck in traffic on the highway. Had Plaintiffs been able to stay in their own

15   home, they could have completely avoided the extremely distressing ordeal.

16   65.   On July 27, 2020 Plaintiffs were allowed back to the Parker Home. LINCOLN

17   MILITARY HOUSING had the microbial expert conduct testing once again, but Plaintiffs were

18   never provided a copy of the report despite requesting a copy numerous times.

19   66.   For approximately three (3) weeks, Plaintiffs did not experience any mold or water

20   intrusion issues at the Parker Home. However, Plaintiffs continued to have rodent and pest

21   problems throughout the entire month.

22   67.   On August 21, 2020 Plaintiffs moved the couch in the living room at the Parker

23   Home, and found water damage and visible mold on the wall that connected the living room to the

24   master bedroom. Plaintiffs once again contacted the LINCOLN MILITARY HOUSING district

25   office and contacted Elvira Martinez directly. Elvira Martinez, and Mark Mitchell arrived at the

26   Parker Home with a mold remediation expert and taped off the area. Mold had also grown on the

27   back of the couch and on the lamp that touched that portion of the wall.

28

1    68.    On August 22, 2020, Elvira Martinez emailed Plaintiffs and told them that there
2    was no moisture in the area. Once again, Plaintiffs requested a copy of the report conducted by the
3    microbial expert, but once again LINCOLN MILITARY HOUSING refused to provide Plaintiffs
4    with a copy. Plaintiffs were forced to continue living on the property with that area of the home
5    taped off.

6    69.    On or around August 28, 2020 a representative from the naval government housing
7    office came to the Parker Home to find out what was happening. The naval government housing
8    representative took moisture readings in the taped-off area of the Parker Home and determined
9    that the area had elevated moisture levels, despite the fact that Elvira Martinez had affirmatively
10   misrepresented to Plaintiffs approximately one (1) week prior that there was no elevated moisture
11   in the area. The representative from the naval government housing office then requested Plaintiffs
12   once again ask LINCOLN MILITARY HOUSING for the maintenance records and microbial
13   expert reported from the Parker Home because the naval government housing office did not have
14   access to them.

15   70.    Later that same day on or around August 28, 2020, a LINCOLN MILITARY
16   HOUSING representative came to the Parker Home to fix the drywall and seal off the area.

17   71.    That evening on or around August 28, 2020, Plaintiffs had a conference call with
18   Elvira Martinez, her associate Jenn Simmons and with a Naval Government Housing
19   Representative. During the call Jenn Simmons and Elvira Martinez represented that LINCOLN
20   MILITARY HOUSING had been offering Plaintiffs some amount of money to resolve the ongoing
21   issues, despite the fact that Plaintiffs had never been offered anything. Plaintiff Thomas
22   Maslankowski quickly pointed out that the misrepresentation was false, and that Plaintiffs had
23   never received anything from LINCOLN MILITARY HOUSING despite the constant issue on
24   two (2) different properties.

25   72.    On or around August 2021, Thomas Maslankowski was tested through a
26   Methacholine Challenge test, to test for Asthma at For Belvoir Community Hospital in Fort
27   Belvoir, VA, by Dr. Kimbely Fabyan. The test consists of four (4) rounds of breathing tests, where

28

WEBB LAW GROUP, APC
465 West Fallbrook Avenue, Suite 102
Fresno, California 93711

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1   the Doctors administer Methacholine in small doses to attempt to recreate asthma symptoms. The

2   threshold which doctors set is twenty percent (20%) degraded lung capacity. Following the first

3   test of the lowest dose of Methacholine, Thomas Maslankowski had a thirty- three (33%) degraded

4   lung capacity. Due to the dangers of continuing the testing, Doctors halted the tests.

5          73.   Mr. Maslankowski had never before experienced asthma of any kind. Now, Mr.

6   Maslankowski's career is threatened by these asthma symptoms that, on information and belief,

7   were caused by the mold on the two (2) properties managed by LINCOLN MILITARY

8   HOUSING.

9          74.   As a result of Plaintiffs' exposure to mold on two (2) different properties, both

10   owned and managed by LINCOLN MILITARY HOUSING, Plaintiffs suffered extreme personal

11   injury as well as emotional distress.

12          75.   In addition to the damages described herein, on the information and belief,

13   Plaintiffs will suffer ongoing and future medical damages as a result of their exposure to toxic

14   mold.

15          76.   The conditions complained of herein were not caused by any act or omission of any

16   Plaintiff. Plaintiffs diligently reported all issues to Defendants, and Defendants failed to take any

17   reasonable remedial measures.

18                              **FIRST CAUSE OF ACTION**

19                                    Negligence

20                **(By All Plaintiffs Against All Defendants and Does 1-50)**

21          77.   Plaintiffs re-allege and incorporate herein and by reference each and every previous

22   and subsequent allegation as though fully set forth herein.

23          78.   At all times mentioned in this complaint, Defendants were engaged in the business

24   of owning, leasing, renting, operating, providing, supervising, maintaining, managing,

25   constructing, inspecting, and/or repairing the Leased Property before, during and after Plaintiffs'

26   tenancy.

27

28

79.     At all times relevant herein, Defendants owed a non-delegable duty of care to Plaintiffs under the common law and as specified in Civil Code 1714 to exercise due care in the ownership, leasing, operating, maintenance, construction, and management of the Leased Property to avoid foreseeable injury to others. Such due care required Defendants to comply with all building, housing, plumbing, electrical, health and safety codes, civil codes, and other ordinances, statutes, regulations and laws regarding the maintenance and operation of residential rental housing.

80.     Under the provisions of Civil Code Section 1941, 1941.1, et seq., Health and Safety Codes (including but not limited to California Health and Safety Code Section 17920.3), and applicable building, plumbing, electrical and housing Codes, Defendants and Does 1- 50 were required to put the rented Leased Property in a habitable condition fit for human occupation before renting and to keep and maintain the Leased Property in such condition and to repair all subsequent dilapidations that rendered the Leased Property untenantable.

81.     At all times mentioned in this Complaint, Defendants had a duty to Plaintiffs to properly and safely own, lease, rent, operate, provide, supervise, maintain, manage, construct, inspect, and repair the Leased Property so as to make it habitable, safe, and hazard-free, enabling tenants, including Plaintiffs, to quietly enjoy the Leased Property.

82.     At all times mentioned in this Complaint, Defendants had a duty to Plaintiffs to use ordinary care for the preservation of the Leased Property and to maintain it in good repair, to repair all deteriorations or injuries to the Leased Property caused by their want of ordinary care and to avoid intentional or reckless damage, destruction, demolition, or deterioration to the Leased Property, its fixtures, components, systems and/or structures.

83.     At all times mentioned in this Complaint, Defendants owed Plaintiffs a legal duty to exercise reasonable care to ensure that such space was safe to occupy, and that Plaintiffs' occupancy of such space would not result in exposure to anything that would negatively affect Plaintiffs' health, including but not limited to excess moisture, water damage, and/or microbial contamination.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

COMPLAINT
- 15 -

84.   At all times mentioned in this complaint, Defendants had a duty to Plaintiffs to properly and safely repair, construct, demolish, remove, refurbish, remodel, restore, remediate, and ·clean the Leased Property and its building materials, so as to maintain the Leased Property in a habitable, safe, and hazard-free condition.

85.   Plaintiffs are informed and believe and, on that basis, allege that Defendants knew or should have known at all times relevant to this Complaint that the Leased Property suffered from the microbial mold contamination, rendering the Leased Property substandard and untenantable as alleged herein.

86.   At the time Defendants and Does 1-50 rented the Leased Property to Plaintiffs, and thereafter, Defendants and Does 1-50 so negligently owned, leased, rented, operated, managed, maintained, and repaired the Leased Property so as to cause it to be uninhabitable and unfit, unhealthy, and unsafe for human occupation in that the Leased Property suffered from design and construction defects and deficiencies, causing and allowing water and moisture intrusion into the living spaces of the Leased Property, causing and allowing the Leased Property to become contaminated with excess moisture and humidity and microbial growth, and otherwise failed to comply with those applicable housing, plumbing and building codes, Civil Codes, Health and Safety Codes, Federal and State Regulation concerning residential rental properties, including but not limited to Sections 1714 and 1941 et seq., which materially affect the health and safety of the Plaintiffs as tenants and their invited guests.

87.   Defendants negligently failed to exercise the due care owed to Plaintiffs in owning,

leasing, maintaining, operating, and repairing and overseeing the Leased Property, as alleged herein, and furthermore have caused and/or failed to remediate damage and deterioration to the Leased Property, components, systems, materials, structures, and fixtures therein, among other items as already alleged herein.

88.   Defendants breached their legal duty to Plaintiffs by negligently, improperly, recklessly and in a non-controlled manner, exposing Plaintiffs to excessive moisture, dampness,

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1 | and humidity, as well as microbial contamination, while Plaintiffs were living in the Leased

2 | Property, as alleged herein. Such breach was a legal and proximate cause of damage to Plaintiffs

3 | as alleged herein.

4 | 89.     Defendants further breached their legal duties to Plaintiffs because they improperly,

5 | negligently, carelessly and in a reckless disregard for Plaintiffs' safety and rights, disturbed and/or

6 | caused to be disturbed microbial growth and contamination at the Leased Property, in such a

7 | manner so as to expose Plaintiffs to such contamination and cause injury to Plaintiffs and did so

8 | by failing to exercise due care.

9 | 90.     Defendants further breached their duties of care to Plaintiffs and negligently

10 | caused Plaintiffs to be injured by Defendants' tortious acts, omissions and conduct, by the

11 | following conduct:

12 |          a.     The failure to provide Plaintiffs with a reasonably safe and habitable

13 | premises in which to live;

14 |          b.     The failure to take reasonable general precautions to prevent injury to

15 | Plaintiffs;

16 |          c.     The failure to provide, recommend, or require containment, protective

17 | clothing, hoods, respirators, ventilators or other apparatus for the protection of Plaintiffs;

18 |          d.     By negligently and recklessly renting and maintaining the premises as set

19 | forth above and as defined by, but not limited to, Civil Code 1714 et seq.; negligently and

20 | recklessly violating the applicable building, health and safety codes, ordinances, statutes and laws;

21 | and negligently failing to correct such unlawful conditions so as to make the premises fit for human

22 | habitation;

23 |          e.     The failure to cure defects and deficiencies in the Leased Property which

24 | were known or should have been known, which led to increased moisture, odors, and pervasive

25 | microbial growth and contamination in and around the interior living spaces of the Leased

26 | Property;

27 |

28 |

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 17 -

f.      The failure to comply with all applicable building, health & safety, housing, plumbing, and civil codes, as well as other applicable laws, codes, regulations, and ordinances for rental properties concerning the tenants' health and safety;

g.      The failure to consult, read and utilize current literature regarding microbial contamination, indoor air quality and "sick building syndrome" and other materials, including those produced by the EPA and federal and state agencies for landlords, residential building owners and managers; and

h.      The failure to conduct adequate maintenance, repair and inspection, including failing to remedy known building code violations such as leaks, excess moisture, and microbial contamination, and others as alleged herein.

91.   The active negligence and failures to abide by applicable standards of care by Defendants constitutes negligence per se because of violations of applicable statutes, codes, and ordinances which led to injury of foreseeable parties intended to be protected by such codes, ordinances and statutes, including Plaintiffs.

92.   As a direct and proximate result of Defendants' and Does 1-50 negligence as alleged above, the Leased Property was in disrepair and not maintained, so as to be uninhabitable and unfit for human occupation in that, among other things, Defendants and Does 1-50, and each of them, carelessly and negligently failed to investigate, remediate, and maintain in good repair the building components, and as a proximate result caused and allowed to exist water/moisture intrusion into living spaces causing microbial growth and indoor air contamination. None of these conditions were known to Plaintiff at the time they moved into the premises.

93.   As a direct and proximate result of Defendants' breaches as alleged herein, Plaintiffs sustained injury to their health and strength and to their bodies as alleged herein, have suffered severe resulting distress, anxiety, worry, and frustration, and incurred medical expenses in the treatment thereof, all in an amount to be proven at trial.

94.     As a direct and proximate result of the above-described conduct and omissions of Defendants, Plaintiffs have suffered damage to their respiratory systems, conscious pain, suffering and emotional distress, in a sum to be determined according to proof at trial.

95.     As a further direct and proximate result of the tortious acts, omissions and conduct of Defendants, Plaintiffs have sustained, and/or are certain in the future to sustain, losses, injuries and damages as follows:

        a.    Expenditures for past, present and future medical services and other curative treatment and items in connection with the care of Plaintiffs' injuries, including costs of insurance, in a sum to be determined according to proof at trial; and

        b.    Expenditures for the replacement or cleaning of all Plaintiffs' personal property and belongings within the Leased Property.

96.     As a further direct and proximate result of Defendants' negligent and wrongful conduct and omissions as alleged herein, Plaintiffs have suffered mental stress, emotional distress, discomfort, annoyance, anxiety, physical injuries, illness, pain and suffering, property damage and lost income; all to their general and specific damage in an amount to be determined at trial but which amount is within the jurisdictional requirements of this Court.

97.     As a further proximate result of Defendants' and Does 1-50's negligence, Plaintiffs suffered property damage and economic loss including, but not limited to, loss of use of the Leased Property; loss of use of personal property items (furnishings, clothes, bedding, and other household items and life necessities); as well as moving expenses; lost rental payments; alternative housing costs, including but not limited to costs to locate a suitable alternative rental property and a security deposit for an alternative rental property; cleaning expenses and loss of income; all to their further damage in an amount to be proven at trial.

98.     It is further alleged that Defendants and Does 1-50 failed to properly investigate, repair, remediate and restore the Leased Property, to place the Leased Property into a habitable, safe building condition and Plaintiffs relied upon Defendants' implied representations of habitability to their respective detriment, injury, and damage.

1    99.    Plaintiffs are entitled to recover their attorneys fees under the subject lease

2  agreements entered into between the parties. Plaintiffs have hired a law office to prosecute their

3  claims and are entitled to their attorneys' fees and costs after trial in this matter.

**SECOND CAUSE OF ACTION**

**Nuisance**

**(By All Plaintiffs against All Defendants and Does 1-50)**

7    100.    Plaintiffs re-allege and incorporate herein and by reference each and every previous

8  and subsequent allegation as though fully set forth herein.

9    101.    The defective and dangerous conditions of the Leased Property and the Parker

10  Home (*hereinafter collectively referred to as the* "Subject Property") as alleged in this Complaint

11  constitute a nuisance within the meaning of California Civil Code Section 3479 and California

12  Code of Civil Procedure Section 731 in that they deprived Plaintiffs of the safe, healthy, and

13  comfortable use of the Subject Property and in that said conditions were injurious to the health and

14  welfare of Plaintiffs and/or Plaintiffs' property, and that the conditions and/or injuries created a

15  substantial and unreasonable interference with Plaintiffs'' peaceful and quiet enjoyment of their

16  home.

17    102.    Plaintiffs are informed and believe, and based thereon allege, that Defendants, and

18  each of them, by their acts, conduct, failure to act, and/or omissions, created, maintained,

19  exacerbated, and concealed a nuisance and did not take any reasonable steps to immediately abate

20  said nuisance, although requested to do so.

21    103.    As a proximate result of Defendants maintenance of the nuisance, Plaintiffs

22  suffered discomfort and annoyance, all to their general damage, in an amount to be proven at trial.

23    104.    As a further proximate result of Defendants' conduct, Plaintiffs suffered property

24  damage and economic loss including, but not limited to, loss of use of the Subject Property, loss

25  of use of personal property (furnishings, clothes, bedding, and other household items and life

26  necessities), as well as moving expenses; lost rental payments; alternative housing costs, including

27  but not limited to costs to locate a suitable alternative rental property and a security deposit for an

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1   alternative rental property; cleaning expenses and loss of income; all to their further damage in an

2   amount to be proven at trial.

3        105.    In maintaining the nuisance, Defendants acted with full knowledge of the

4   foreseeable consequences thereof and of the damage being caused to Plaintiffs. Despite this

5   knowledge Defendants failed to abate the nuisance by repairing the uninhabitable, defective, and

6   dangerous conditions of the subject property.

7        106.    As a result of Defendants' conduct, Plaintiffs have been, and continue to be, subject

8   to physical injuries, including but not limited to those alleged herein, which are seriously damaging

9   their health and destroying their quality of life in amount not ascertainable at this time, but which

10  will be proven at the time of trial.

11       107.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered

12  damage to respiratory systems, mental anguish, conscious pain, suffering and emotional distress,

13  emotional distress, discomfort, annoyance, anxiety, physical injuries, illness, property damage,

14  lost income, and other forms of general and specific damage in an amount to be determined at trial

15  but which amount is within the jurisdictional requirements of this Court.

16                              **THIRD CAUSE OF ACTION**

17                              **Negligent Misrepresentation**

18                   **(By All Plaintiffs Against All Defendants and Does 1-50)**

19       108.    Plaintiffs re-allege and incorporate herein and by reference each and every previous

20  and subsequent allegation as though fully set forth herein.

21       109.    Defendants had a duty to Plaintiffs to assure that any representations affirmatively

22  made to Plaintiffs regarding the Subject Property were true.

23       110.    On multiple occasions as described in this Complaint, Defendants represented to

24  Plaintiffs that there were no mold or water intrusion issues on the Leased Property, and at the

25  Parker Home.

26

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

111.   Additionally Defendants represented to Plaintiffs orally and in writing on multiple occasions that Defendants would remediate the problems on the property, including but not limited to fixing the mold issues on the property.

112.   In making the intentional affirmative misrepresentations of material fact as described herein, even if Defendants believed them to be true at the time made, they made such statements and misrepresentations without any reasonable basis for believing them to be true and should have known them to be false. Defendants had no reasonable grounds for believing their representations to Plaintiffs were true at the time they made them.

113.   Despite the extremely limited testing, on information and belief, Defendants represented to Plaintiffs that the property was safe for occupation and did not release Plaintiffs from their lease.

114.   In making the affirmative misrepresentations of material fact as described herein, even if Defendants believed them to be true at the time made, they made such statements and misrepresentations without any reasonable basis for believing them to be true and should have known them to be false. Defendants had no reasonable grounds for believing their representations to Plaintiffs were true at the time they made them.

115.   Defendants made the affirmative misrepresentations and statements of material fact about the Subject Property as described herein with the intent to induce Plaintiffs to rely on them and with the intent to induce Plaintiffs to remain residing in the Subject Property and continue to pay monthly rent.

116.   Plaintiffs reasonably and justifiably relied on Defendants misrepresentations to Plaintiffs detriment, injury, and damage.

117.   As a direct and proximate result of such negligent misrepresentations by Defendants, and Plaintiffs' reasonable reliance thereon, Plaintiffs remained residing and occupying the Subject Property, which contained extensive damage and contamination and posed a significant health risk to Plaintiffs. Plaintiffs justifiably believed no health risk existed based on Defendants affirmative representations, including but not limited microbial contamination from

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1 identified and/or unidentified sources. These conditions and the above-described actions of
2 Defendants has caused Plaintiffs significant economic and non-economic damage in an amount
3 according to proof at trial.

### FOURTH CAUSE OF ACTION

**Negligent Infliction of Emotional Distress**

**(By All Plaintiffs Against Defendants and DOES 1-50)**

7 118. Plaintiffs re-allege and incorporate herein and by reference each and every previous
8 and subsequent allegation as though fully set forth herein.

9 119. Defendants and Plaintiffs had a special landlord/tenant relationship during the
10 period of Plaintiffs' tenancy at the Subject Property.

11 120. Defendants knew, or in the exercise of reasonable care should have known, that by
12 failing to maintain the Subject Property, Plaintiffs would be exposed to harmful levels or microbial
13 contamination, including harmful indoor air quality, as alleged herein. Defendants further knew,
14 or in the exercise of reasonable care should have known, that Plaintiffs would suffer physical harm
15 and severe emotional distress upon learning of this exposure.

16 121. Despite their knowledge that the Subject Property was deficient and substandard,
17 Defendants' nevertheless – in a willful, wanton, negligent, reckless, unlawful, and careless manner
18 – and in violation of State and other applicable laws, failed to property investigate, inspect, test,
19 maintain, repair, and remediate the Subject Property so as to avoid the foreseeable harm to
20 Plaintiffs.

21 122. As a result of Plaintiffs' exposure to toxic microbial contamination caused by
22 excessive moisture levels, and dampness on the property, Plaintiffs sought medical evaluations
23 and treatments from their doctor.

24 123. Plaintiffs have suffered severe and substantial emotional distress, worry, anxiety,
25 loss of sleep, frustration, and pain and suffering as a result of the exposure to toxic mold, and as a
26 result of the physical and psychological impact such exposure has had on Plaintiffs.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

COMPLAINT
- 23 -

124.   As a direct and proximate result of Defendants' breaches alleged herein, Plaintiffs sustained injury to their health and strength, have suffered severe, substantial, enduring, serious emotional distress, and have incurred medical expenses in the treatment thereof all in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Habitability

### (By All Plaintiffs Against All Defendants and Does 1-50)

125.   Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

126.   As previously described in this Complaint, Plaintiffs are informed and believe, and based thereon allege, that at all relevant times and/or potions thereof, Defendants were owners, landlord, and/or lessors of the Subject Property and/or authorized agents of the owners, landlords, and/or lessors of the Subject Property and responsible for the proper management, maintenance and/or repair of the Subject Property.

127.   Plaintiffs entered into a written lease with Defendants. Under the rental agreement Plaintiffs paid rent, a security deposit, and other fees and costs.

128.   The rental agreement expressly acknowledges that the residential use of the Subject Property was for Plaintiffs.

129.   Defendants impliedly warranted to Plaintiffs that the Subject Property was habitable.

130.   As described at length within the instant Complaint, Defendants knew or should have known of the chronic moisture, and on the Leased Property which led to the growth of toxic mold and the spread of dangerous microbial contamination.

131.   At the time Plaintiffs took possession and throughout the period Plaintiffs remained on the property, but unbeknownst to Plaintiffs, the Leased Property was uninhabitable and unfit for human occupation due to improper and negligent, careless, and reckless maintenance and repair, all contributing to water and moisture intrusion, causing microbial/mycological

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1  contamination and infestation of the Leased Property, rendering the property unsafe for habitation
2  and causing Plaintiffs severe economic and non-economic damage.

3      132.   Plaintiffs remained unaware of any injury or causation to their continuing chronic
4  health problems until approximately Summer 2019 when mold was first discovered on the Leased
5  Property..

6      133.   Plaintiffs notified Defendants many times of the defective conditions throughout
7  the period Plaintiffs lived on the Subject Property, but Defendants failed to investigate and/or
8  correct, repair and/or remediate the conditions in a timely and proper manner (or at all).

9      134.   Plaintiffs upheld all of Plaintiffs duties as required under the Lease: for example,
10 Plaintiffs regularly made timely rent payments.

11     135.   The Subject Property as it existed was uninhabitable and had no rental value
12 whatsoever as it was the source of Plaintiffs' health problems, and directly and proximately caused
13 the economic and non-economic damages Plaintiffs have suffered.

14     136.   As a proximate result of Defendants breach of the implied warranty of habitability,
15 and failure to repair, maintain, or remediate the conditions on the property, Plaintiffs sustained
16 damage and serious personal injuries, and well as a litany of other economic and non-economic
17 damages as described in this Complaint and in an amount to be proven at trial.

18                          **SIXTH CAUSE OF ACTION**

19             **Breach of Implied Covenant of Quiet Use and Enjoyment**

20                **(By All Plaintiffs Against Defendants and Does 1-50)**

21     137.   Plaintiffs re-allege and incorporate herein and by reference each and every previous
22 and subsequent allegation as though fully set forth herein.

23     138.   Implied in the lease between Plaintiffs and Defendants. Was an implied covenant
24 of quiet enjoyment by which Defendants', as landlord, impliedly promised Plaintiffs to not create
25 conditions through acts or omissions, which would disturb Plaintiffs' possession and beneficial
26 use and enjoyment of the premises for the purposes contemplated by the rental agreement.

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

                              **COMPLAINT**
                                - 25 -

1    139.    Defendants breached the implied covenant by failing to maintain an appropriately

2    safe and secure living environment and residence which was habitable.

3    140.    As a proximate and legal result of Defendants' acts and omissions in breaching the

4    implied covenant of quiet enjoyment, Plaintiffs have suffered economic and non-economic

5    damages as described throughout this Complaint in an amount to be determined at trial, but which

6    exceeds the jurisdictionally required minimum.

## SEVENTH CAUSE OF ACTION

### Rent Abatement

### (By All Plaintiffs Against All Defendants and Does 1-50)

10    141.    Plaintiffs re-allege and incorporate herein and by reference each and every previous

11    and subsequent allegation as though fully set forth herein.

12    142.    Defendants leased the Subject Property (both the Leased Property and the Parker

13    Home) to Plaintiffs by written rental agreement.

14    143.    Defendants leased the Subject Property to Plaintiffs for use as a residential property.

15    144.    Plaintiffs took possession of the premises and faithfully and promptly paid their

16    rent and performed all other obligations imposed by the rental agreement.

17    145.    At the time the rental agreement was entered into, and throughout the period of

18    occupancy of the Subject Property, Defendants knowingly caused and permitted substandard

19    building, design, construction, maintenance, and repairs, as well as hazardous and unhealthy

20    conditions, including microbial/mycological contamination in the Subject Property's living areas;

21    as alleged herein, to exist within and about the Subject Property.

22    146.    Defendants at all relevant times knew of the conditions that existed in violation of

23    numerous provisions of State and Local Housing Codes, including but not limited to the provisions

24    of California Civil Code Section 1941, California State Building Standard Codes, UBC Standards,

25    and OSHA Standards.

26    147.    Despite this knowledge and repeated requests by Plaintiffs for the property to be

27    fixed, Defendants failed to do so, refused to do so, and/or actively concealed issues on the property

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1   and made surface-level cosmetic repairs that did not actually fix the issues on the Subject Property

2   in violation of California Civil Code Section 1941, 1941.1, and numerous other state and local

3   laws and regulations.

4       148.   Because of the above-stated conditions, the Subject Property leased by Plaintiffs

5   was unsafe, unhealthy, substandard, untenantable, and uninhabitable. Defendants breached the

6   warranty of habitability and warranty of quiet use and enjoyment to Plaintiffs.

7       149.   Because of these issues, the fair rental value of the residence at all times mentioned

8   in the Complaint was $0.00 per month.

9       150.   Because of the continued existence of these conditions, Plaintiffs were unable to

10   remain in the Subject Property and were forced to vacate.

11       151.   Plaintiffs were completely unable to use the Subject Property due to its

12   uninhabitability as a result of the conditions alleged herein.

13       152.   During the occupancy, Plaintiffs paid a total rent in the sum to be proven at trial on

14   a per month basis. The monthly rent at the LEASED PROPERTY was $2,000 per month from

15   November 2017 through November 2018; and $2,100 per month from December 2018 through

16   October 2019. The monthly rent at the PARKER HOME was $2,142 per month from October

17   2019 to December 2019; and $2,139 from December 2019 to August 2020. during the period

18   Plaintiffs resided at the Leased Property.

19   ~~153.   The total fair rental value of the premises during this period was no more than $0.00~~

20   and therefore Plaintiffs have been damaged in the sum to be proven at trial.

21   **EIGHTH CAUSE OF ACTION**

22   **Gross Negligence**

23   **(By All Plaintiffs Against All Defendants and Does 1-50)**

24       154.   Plaintiffs re-allege and incorporate herein and by reference each and every previous

25   and subsequent allegation as though fully set forth herein.

26       155.   At all relevant times herein, Defendants were owners, managers, and lessors of the

27   Subject Property.

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

156.    Defendant failed to repair or fix dangerous conditions present on the Property, as described throughout this Complaint, to protect Defendants' tenants. Defendant even failed to fix these conditions after Defendant knew or should have known of the dangerous conditions and the presence of mold.

157.    Plaintiffs were tenants of Defendants pursuant to the written Lease agreement that both parties executed.

158.    Defendants failure to fix the mold problems represents reckless disregard for the probability of harm to the tenants on the Leased Property.

159.    Plaintiffs have suffered severe harm as a proximate and legal result of Defendants' failure to maintain, repair, or remediate the issues on the Leased Property.

160.    At all relevant times Plaintiffs acted reasonably and fully complied with all Plaintiffs' obligations under the lease agreement.

161.    Defendants failure to act despite the fact that Defendants knew or should have known of the dangerous mold problem represents a serious departure from what a reasonable person, property owner, or property manager would do in similar circumstances.

### NINTH CAUSE OF ACTION

**Premises Liability**

**(By All Plaintiffs Against All Defendants and Does 1-50)**

162.    Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

163.    At all relevant times herein, Defendants were owners, managers, and lessors of the Leased Property.

164.    Defendants failed to repair or fix dangerous conditions present on the Property, as described throughout this Complaint, to protect Defendants' tenants. Defendants even failed to fix these conditions after Defendant knew or should have known of the dangerous conditions and the presence of toxic mold.

165.    Plaintiffs were tenants of Defendants pursuant to the written Lease agreement that both parties executed.

166.    Defendants failure to fix the mold problems represents reckless disregard for the probability of harm to the tenants on the Leased Property.

167.    Plaintiffs have suffered severe harm as a proximate and legal result of Defendants' failure to maintain, repair, or remediate the issues on the Leased Property.

168.    At all relevant times Plaintiffs acted reasonably and fully complied with all Plaintiffs' obligations under the lease agreement.

169.    Defendants failure to act despite the fact that Defendants knew or should have known of the dangerous mold problem represents a serious departure from what a reasonable person, property owner, or property manager would do in similar circumstances.

///

///

## TENTH CAUSE OF ACTION

### Fraud- Concealment

### (By All Plaintiffs Against All Defendants and Does 1-50)

170.    Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

171.    At all relevant times herein, Defendants were owners, managers, and lessors of the Leased Property.

172.    On multiple occasions as described in this Complaint, Defendants represented to Plaintiffs that there was no mold or water intrusion issues on the Subject Properties. Additionally, on multiple occasions as described in this Complaint, Defendants affirmatively misrepresented that mold and water intrusion issues had been adequately remediated on the Subject Properties.

173.    In making the intentional affirmative misrepresentations of material fact as described herein, even if Defendants believed them to be true at the time made, they made such statements and misrepresentations without any reasonable basis for believing them to be true and

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1   should have known them to be false. Defendants had no reasonable grounds for believing their

2   representations to Plaintiffs were true at the time they made them.

3        174.   Defendants made the intentional affirmative misrepresentations and statements of

4   material fact about the Leased Property as described herein with the intent to induce Plaintiffs to

5   rely on them and with the intent to induce Plaintiffs to remain residing in the Leased Property and

6   continue to pay monthly rent.

7        175.   Plaintiffs reasonably and justifiably relied on Defendants misrepresentations to

8   Plaintiffs detriment, injury, and damage.

9        176.   Plaintiffs did not know of the concealed facts, and Defendants prevented Plaintiffs

10   from conducting further investigations to find a cause or to address the expressed concerns of

11   Plaintiffs.

12        177.   Had the concealed information been disclosed to Plaintiffs by Defendants,

13   Plaintiffs reasonably would have behaved differently: namely they would have moved away from

14   the Leased Property to avoid exposure to the toxic mold.

15        178.   As a direct and proximate result of such negligent misrepresentations by

16   Defendants, and Plaintiffs' reasonable reliance thereon, Plaintiffs remained residing and

17   occupying the Subject Property, which contained extensive damage and contamination and posed

18   a significant health risk to Plaintiffs. Plaintiffs justifiably believed no health risk existed for the

19   entirety of eleven months while residing in the Leased Property based on Defendants'' affirmative

20   representations, including but not limited to water leaks, moisture, and microbial contamination

21   from identified and/or unidentified sources. These conditions and the above-described actions of

22   Defendants has caused Plaintiffs significant economic and non-economic damage in an amount

23   according to proof at trial.

24                              **ELEVENTH CAUSE OF ACTION**

25                              **Constructive (Wrongful) Eviction**

26                    **(By All Plaintiffs Against All Defendants and Does 1-50)**

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1      179.   Plaintiffs re-allege and incorporate herein and by reference each and every previous

2  and subsequent allegation as though fully set forth herein.

3      180.   As a proximate result of Defendants' failure to maintain the Leased Property in a

4  habitable and tenantable condition that complied with applicable state, federal and local building

5  and housing codes, and Defendants' failure to maintain the Leased Property in a condition fit for

6  human occupation, Defendants breached their covenant of the quiet use and enjoyment to Plaintiffs

7  and Plaintiffs were required and forced to vacate the Leased Property and did so on or about

8  October 22, 2019 constituting a constructive and wrongful eviction.

9      181.   As a proximate result of Defendants' failure to maintain the Parker Home in a

10  habitable and tenantable condition that complied with applicable state, federal and local building

11  and housing codes, and Defendants' failure to maintain the Parker Home in a condition fit for

12  human occupation, Defendants breached their covenant of the quiet use and enjoyment to Plaintiffs

13  and Plaintiffs were required and forced to vacate the Parker Home and did so on or about July 24,

14  2020 constituting a constructive and wrongful eviction.

15      182.   Defendants' constructive eviction of Plaintiffs on October 22, 2019 and July 24,

16  2020 entitled Plaintiffs to immediately terminate their tenancy and Plaintiffs' obligations under

17  the rental agreement were extinguished. *See e.g. Green v. Superior Court* (1974) 10 Cal. 3d 616,

18  639.

19      183.   As a proximate result of Defendants' conduct, as alleged in this Complaint,

20  Plaintiffs suffered a host of general and specific damages in an amount to be proven at trial

21  (including but not limited to: physical injury, mental anguish, emotional damage, psychological

22  injury, lost wages, lost rent, loss of personal property, pain and suffering, moving expenses,

23  housing costs).

24      184.   Plaintiffs have been, and continue to be, subject to physical injuries which are

25  seriously damaging their health and destroying their quality of life in an amount not ascertainable

26  at this time but which will be proven at the time of trial.

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

185.   Defendants acted fraudulently, intentionally, willfully, retaliatorily, oppressively, and willfully with a conscious disregard for Plaintiffs' safety and rights. Such action justifies an award of punitive and exemplary damages under California Civil Code Section 3294.

## TWELFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (By All Plaintiffs Against All Defendants and Does 1-50)

186.   Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

187.   Defendants and Plaintiffs had a special landlord/tenant relationship during the period of Plaintiffs' tenancy at the Subject Property.

188.   Defendants knew that by failing to maintain the Subject Property, Plaintiffs would be exposed to harmful levels or microbial contamination, including harmful indoor air quality, as alleged herein. Defendants further knew, or in the exercise of reasonable care should have known, that Plaintiffs would suffer physical harm and severe emotional distress upon learning of this exposure.

189.   Despite their knowledge that the Subject Property was deficient and substandard, Defendants' nevertheless – in a willful, wanton, negligent, reckless, unlawful, and careless manner – and in violation of State and other applicable laws, failed to property investigate, inspect, test, maintain, repair, and remediate the Subject Property so as to avoid the foreseeable harm to Plaintiffs.

190.   Defendants acted outrageously, with reckless disregard for the probability that Plaintiffs would suffer physical and emotional distress as a result of the condition of the Subject Property, and the subsequent removal from the home.

191.   As a result of Plaintiffs' exposure to toxic microbial contamination caused by excessive moisture levels, and dampness on the property, Plaintiffs sought medical evaluations and treatments from their doctor.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

192.    Plaintiffs have suffered severe and substantial emotional distress, worry, anxiety, loss of sleep, frustration, and pain and suffering as a result of the exposure to toxic mold, and as a result of the physical and psychological impact such exposure has had on Plaintiffs.

193.    As a direct and proximate result of Defendants' breaches alleged herein, Plaintiffs sustained injury to their health and strength, have suffered severe, substantial, enduring, serious emotional distress, and have incurred medical expenses in the treatment thereof all in an amount to be proven at trial.

## PRAYER

WHEREFORE, Plaintiffs request judgment against Defendants, and each of them, for the following:

1.    For general damages in excess of this Court's minimum jurisdiction, according to proof;

2.    Actual damages and attorneys fees and costs pursuant to California Civil Code Section 1942.4, and as allowable by law;

3.    For special damages according to proof;

4.    For prejudgment interest as provided by law;

5.    For costs of suit incurred herein;

6.    For investigation costs, including *Stearman* damages;

7.    For punitive and exemplary damages pursuant to California Civil Code Section 3294 and as allowed by law, according to proof;

8.    For reasonable attorney fees pursuant to the attorney fee provision contained within the lease agreement at issue in the instant case;

9.    For any other and further relief the court considers just and proper.

Dated: January 7, 2020                        **WEBB LAW GROUP, APC**

By_____
                                LENDEN F. WEBB

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

CHRISTIAN B.  CLARK
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Dated: January 7, 2020

Christian B. Clark for Plaintiffs

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

COMPLAINT
- 34 -

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7069 |

PLAINTIFF(S) / PETITIONER(S):   Anna Maslankowski et.al.

DEFENDANT(S) / RESPONDENT(S):   Camp Pendleton & Quantico Housing LLC et.al.

MASLANKOWSKI VS CAMP PENDLETON & QUANTICO HOUSING LLC [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER:<br>37-2022-00002460-CU-PO-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Katherine Bacal                                                Department: C-69

**COMPLAINT/PETITION FILED:** 01/05/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 07/08/2022 | 09:00 am | C-69 | Katherine Bacal |

Due to the **COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):

- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

SDSC CIV-721 (Rev. 04-21)        **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)**

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**01/05/2022** at 11:19:11 AM

Clerk of the Superior Court
By Erika Engel, Deputy Clerk

Lenden Webb, Esq. (236377)
Christian B. Clark, Esq. (330380)
**WEBB LAW GROUP, APC**
10509 Vista Sorrento Pkwy, Suite 450
San Diego, CA 92121
Telephone: (559) 431-4888
Facsimile: (559) 821-4500
Email: LWebb@WebbLawgroup.com
Email: CClark@WebbLawGroup.com

Attorneys for Plaintiffs

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## CIVIL UNLIMITED DIVISION

| | |
|---|---|
| ANNA MASLANKOWSKI, an individual; THOMAS MASLANKOWSKI, an individual; ███████████ by and through their guardian ad litem JUSTYNA LINDAHL; ████████, a minor, by and through their guardian ad litem JUSTYNA LINDAHL; <br><br> Plaintiff, <br><br> v. <br><br> CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; and DOES 1 THROUGH 50, inclusive; Defendants. | Case No.: 37-2022-00002460-CU-PO-CTL <br><br> **NOTICE OF JURY FEE DEPOSIT** |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Code of Civil Procedure § 631(b), Plaintiff ANNA

MASLANKOWSKI, an individual; THOMAS MASLANKOWSKI, an individual; ████████

1 ██████████ by and through their guardian ad litem JUSTYNA LINDAHL; ██████

2 ██████████, a minor, by and through their guardian ad litem JUSTYNA LINDAHL

3 hereby deposits the following fees for trial in the above captioned matter:

4      JURY FEES:  $150.00

5

6 Dated: January 3, 2022                                        **WEBB LAW GROUP, APC**

7

8                                                          By_____

9                                                             Christian B. Clark, Esq.
                                                            Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF JURY FEE DEPOSIT
- 2 -



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2022-00002460-CU-PO-CTL        CASE TITLE: MASLANKOWSKI vs CAMP PENDLETON & QUANTICO HOUSING LLC

<u>**NOTICE:**</u> **All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
**(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
**(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359),** <u>***and***</u>
**(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

<u>**Potential Advantages and Disadvantages of ADR**</u>
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

<u>**Most Common Types of ADR**</u>
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
*   In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
*   In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

CIV-010

| ATTORNEY *(Name, State Bar number, and address):*<br>Christian B. Clark      SBN: 330380<br>WEBB LAW GROUP APC<br>466 W. Fallbrook Ave, Suite 102<br>FRESNO, CA 93711<br>TELEPHONE NO.: 559-431-4888     FAX NO. *(Optional):* 559-821-4500<br>E-MAIL ADDRESS *(Optional):* office@webblawgroup.com<br>ATTORNEY FOR *(Name):* | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/05/2022** at 11:19:11 AM<br><br>Clerk of the Superior Court<br>By Erika Engel, Deputy Clerk |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
☐ CENTRAL DIVISION, SMALL CLAIMS, 330 W. BROADWAY, ROOM 241, SAN DIEGO, CA 92101-3827
☐ CENTRAL DIVISION, CIVIL, 330 W. BROADWAY, ROOM 225, SAN DIEGO, CA 92101
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081

PLAINTIFF/PETITIONER: Anna Maslankowski et. al.

DEFENDANT/RESPONDENT: Camp Pendleton and Quantico Housing, LLC et. al.

| **APPLICATION AND ORDER FOR APPOINTMENT**<br>**OF GUARDIAN AD LITEM—CIVIL**<br>☐ **EX PARTE** | CASE NUMBER:<br>37-2022-00002460-CU-PO-CTL |
|---|---|

**NOTE:** *This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name):* Justyna Lindahl          is
   a. ☐ the parent of *(name):*
   b. ☐ the guardian of *(name):*
   c. ☐ the conservator of *(name):*
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented *(if the minor is 14 years of age or older).*
   f. ☒ another interested person *(specify capacity):* Aunt/Godmother

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   Justyna Lindahl                 ph: Care of (559) 431-4888

   460 Andrew Ln, Lake Zurich IL 60047

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   ▮▮▮▮▮▮▮▮                 ph: Care of (559) 431-4888

   13508 Upham Street, Quantico VA 22134

4. The person to be represented is:
   a. ☒ a minor *(date of birth):* 12/30/2016
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☒ the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
   ▮▮▮▮▮▮▮ lived at the subject rental properties in San Diego, which were rendered substandard and uninhabitable by Defendants' negligence and other wrongful conduct. This allowed the property to suffer chronic water and moisture intrusion and high humidity levels, resulting in microbial contamination/mold causing personal injuries and damages to Plaintiffs.

   ☐ Continued on Attachment 5a.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 JCC [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT**<br>**OF GUARDIAN AD LITEM—CIVIL** | Code of Civil Procedure,<br>§ 372 et seq.<br>Westlaw Doc & Form Builder |
|---|---|---|

CIV-010

| PLAINTIFF/PETITIONER: Anna Maslankowski et. al.<br><br>DEFENDANT/RESPONDENT: Camp Pendleton and Quantico Housing, LLC et. al. | CASE NUMBER: |
| --- | --- |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

   c. ☒ the person named in item 3 has no guardian or conservator of his or her estate.

   d. ☒ the appointment of a guardian ad litem is necessary for the following reasons (specify):
   ███████████████ is a minor child and the appointment of a guardian ad litem is necessary to represent his interests in this action where he is a named litigant alleging multiple causes of action against multiple Defendants.

   ☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☒ related (state relationship): Aunt/Godmother
   b. ☐ not related (specify capacity):

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):

   ☐ Continued on Attachment 7.

   Christian Clark
   _____      ►  _____
   (TYPE OR PRINT NAME)                         (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date:

   Justyna Lindahl
   _____      ►  _____
   (TYPE OR PRINT NAME)                         (SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date:

   Justyna Lindahl
   _____      ►  _____
   (TYPE OR PRINT NAME)                         (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER   ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (name): Justyna Lindahl
is hereby appointed as the guardian ad litem for (name): ███████████
for the reasons set forth in item 5 of the application.
Date:

   _____
                              JUDICIAL OFFICER
   SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 JCC [Rev. January 1, 2008]        **APPLICATION AND ORDER FOR APPOINTMENT**        Page 2 of 2
                                          **OF GUARDIAN AD LITEM—CIVIL**

| CASE TITLE<br>Anna Maslankowski et. al. v. Camp Pendleton & Quantico Housing, LLC et. al. | CASE NUMBER |
| --- | --- |

### ATTACHMENT TO JC FORM #CIV-010 (APPLICATION FOR GUARDIAN AD LITEM – CIVIL)

8.  I, *(name):* Justyna Lindahl _____, declare that I am the ☐ parent ☐ guardian ☒ conservator
    of *(name):* ▮▮▮▮▮▮▮▮▮▮▮▮ and:

    a. I ☐ am ☒ am not asserting individual claims or defenses in these proceedings.

    b. The minor ☐ is ☒ is not the subject of a juvenile dependency proceeding.

    c. The minor ☐ is ☒ is not the subject of a probate guardianship.

    d. The minor ☐ is ☒ is not the subject of a custody order. (If a custody order is in effect, the most recent order must be attached.)

9.  Notice of these proceedings has:

    a. ☒ been provided to all of the minor's parents.

    b. ☐ not been provided to all of the minor's parents because:

      i. ☐ I have sole legal custody of the minor identified in this application and have attached a copy of the current custody order.

      ii. ☐ the other parent is deceased.

      iii. ☐ other: _____

    _____
    _____
    _____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 13, 2021 _____

Justyna Lindahl _____
Type or print name

_____
Signature

---

### ORDER ☒ EX PARTE

The court finds that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the Application and Order for Appointment of Guardian ad Litem – Civil (JC Form #CIV-010), as requested.

The court orders that *(name):* Justyna Lindahl is hereby appointed as the guardian ad litem for *(name):* Peter Maslankowski for the reasons set forth in item 5 of the Application and Order for Appointment of Guardian ad Litem – Civil (JC Form #CIV-010).

Date: 1/11/2022 _____

_____
**Judge Katherine Bacal**
Judge of the Superior Court

**ATTACHMENT TO JC FORM #CIV-010**
**(APPLICATION FOR GUARDIAN AD LITEM – CIVIL)**

CIV-010

| | |
|---|---|
| ATTORNEY *(Name, State Bar number, and address)*:<br>Christian B. Clark                    SBN: 330380<br>WEBB LAW GROUP APC<br>466 W. Fallbrook Ave, Suite 102<br>FRESNO, CA 93711<br>TELEPHONE NO.: 559-431-4888       FAX NO. *(Optional)*:559-821-4500<br>E-MAIL ADDRESS *(Optional)*: office@webblawgroup.com<br>ATTORNEY FOR *(Name)*: | FOR COURT USE ONLY<br><br>F I L E D<br>Clerk of the Superior Court<br><br>JAN 0 5 2022<br><br>By: E. Engel, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
☐ CENTRAL DIVISION, SMALL CLAIMS, 330 W. BROADWAY, ROOM 241, SAN DIEGO, CA 92101-3827
☐ CENTRAL DIVISION, CIVIL, 330 W. BROADWAY, ROOM 225, SAN DIEGO, CA 92101
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081

PLAINTIFF/PETITIONER: Anna Maslankowski et. al.

DEFENDANT/RESPONDENT: Camp Pendleton and Quantico Housing, LLC et. al.

| | |
|---|---|
| **APPLICATION AND ORDER FOR APPOINTMENT**<br>**OF GUARDIAN AD LITEM—CIVIL**<br>☐ **EX PARTE** | CASE NUMBER:<br>37-2022-00002460-CU-PO-CTL |

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name)*: Justyna Lindahl                                               Ie
   a. ☐ the parent of *(name)*:
   b. ☐ the guardian of *(name)*:
   c. ☐ the conservator of *(name)*:
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented *(if the minor is 14 years of age or older)*.
   f. ☒ another interested person *(specify capacity)*: Aunt

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number)*:
   Justyna Lindahl                                               ph: Care of (559) 431-4888

   460 Andrew Ln, Lake Zurich IL 60047

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number)*:
   Sofia Maslankowski                                            ph: Care of (559) 431-4888

   13508 Upham Street, Quantico VA 22134

4. The person to be represented is:
   a. ☒ a minor *(date of birth)*: 08/06/2020
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☒ the person named in item 3 has a cause or causes of action on which suit should be brought *(describe)*:
   Sofia Maslankowski lived at the subject rental properties in San Diego, which were rendered substandard and uninhabitable by Defendants' negligence and other wrongful conduct. This allowed the property to suffer chronic water and moisture intrusion and high humidity levels, resulting in microbial contamination/mold causing personal injuries and damages to Plaintiffs.

   ☐ Continued on Attachment 5e.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 JCC [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT**<br>**OF GUARDIAN AD LITEM—CIVIL** | Code of Civil Procedure,<br>§ 372 et seq.<br>Westlaw Doc & Form Builder |

CIV-010

| PLAINTIFF/PETITIONER: Anna Maslankowski et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Camp Pendleton and Quantico Housing, LLC et. al. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

   c. ☒ the person named in item 3 has no guardian or conservator of his or her estate.

   d. ☒ the appointment of a guardian ad litem is necessary for the following reasons (specify):
   Sofia Maslankowski is a minor child and the appointment of a guardian ad litem is necessary to represent her interests in this action where he is a named litigant alleging multiple causes of action against multiple Defendants.

   ☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☒ related (state relationship): Aunt
   b. ☐ not related (specify capacity):

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):

   ☐ Continued on Attachment 7.

Christian Clark
_____          ▶ _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date:

Justyna Lindahl
_____          ▶ _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date:

Justyna Lindahl
_____          ▶ _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER   ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (name): Justyna Lindahl
is hereby appointed as the guardian ad litem for (name): ████████████
for the reasons set forth in item 5 of the application.
Date:

_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**

| CASE TITLE | CASE NUMBER |
|---|---|
| Anna Maslankowski et. al. v. Camp Pendleton & Quantico Housing, LLC et. al. | |

## ATTACHMENT TO JC FORM #CIV-010 (APPLICATION FOR GUARDIAN AD LITEM – CIVIL)

8.  I, *(name):* Justyna Lindahl _____, declare that I am the ☐ parent ☐ guardian ☒ conservator
    of *(name):* ▓▓▓▓▓▓▓ and:

    a. ☐ am ☒ am not asserting individual claims or defenses in these proceedings.
    b. The minor ☐ is ☒ is not the subject of a juvenile dependency proceeding.
    c. The minor ☐ is ☒ is not the subject of a probate guardianship.
    d. The minor ☐ is ☒ is not the subject of a custody order. (If a custody order is in effect, the most recent order
       must be attached.)

9.  Notice of these proceedings has:
    a. ☒ been provided to all of the minor's parents;
    b. ☐ not been provided to all of the minor's parents because:
       i. ☐ I have sole legal custody of the minor identified in this application and have attached a copy of the
          current custody order.
       ii. ☐ the other parent is deceased.
       iii. ☐ other:
       _____
       _____
       _____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 13, 2021

Justyna Lindahl
Type or print name                                                    Signature

---

## ORDER ☒ EX PARTE

The court finds that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of
the Application and Order for Appointment of Guardian ad Litem – Civil (JC Form #CIV-010), as requested.

The court orders that *(name):* Justyna Lindahl _____ is hereby appointed as the guardian ad litem for
*(name):* Sofia Maslankowski _____ for the reasons set forth in item 5 of the Application and Order for
Appointment of Guardian ad Litem – Civil (JC Form #CIV-010).

Date: JAN 1 1 2022

KATHERINE A. BACAL
Judge of the Superior Court

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:    330 West Broadway

MAILING ADDRESS:    330 West Broadway

CITY, STATE, & ZIP CODE:  San Diego, CA 92101-3827

BRANCH NAME:        Central

PLAINTIFF(S):    Anna Maslankowski et.al.

DEFENDANT(S):  Camp Pendleton & Quantico Housing LLC et.al.

SHORT TITLE:    MASLANKOWSKI VS CAMP PENDLETON & QUANTICO HOUSING LLC [IMAGED]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2022-00002460-CU-PO-CTL |
|---|---|

Judge: Katherine Bacal                                       Department: C-69

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)                ☐  Non-binding private arbitration

☐  Mediation (private)                        ☐  Binding private arbitration

☐  Voluntary settlement conference (private)  ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)               ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____            Date: _____

---

Name of Plaintiff                                 Name of Defendant

Signature                                         Signature

Name of Plaintiff's Attorney                      Name of Defendant's Attorney

Signature                                         Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: _____                    _____
                                                   JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)       **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**       Page: 1